# JOSEPH BACKUS v. CITY OF VIRGINIA and Others.[1]

September 5, 1913.

No. 18,297.[2]

**Municipal water and light plant.**

1. Under its home rule charter, the city of Virginia has power to acquire a water and light plant by purchase.

**Same — terms of purchase.**

2. Under its charter, the terms of purchase may be fixed by agreement, without resorting to the method of ascertaining value prescribed in the chapter relative to eminent domain.

**Same — issue of bonds.**

3. Under its charter, the city has power to issue and negotiate bonds to obtain funds with which to pay for a water and light plant.

**Same — water and light bonds.**

4. Under its charter, the city may issue water and light bonds, without a prior levy of revenue sufficient to pay them as they mature.

**Same.**

5. Under its charter, the city may issue water and light bonds which are general obligations of the city.

**Special election valid.**

6. The city charter adopts the general election law, section 223, which requires the posting for 20 days of the notice of a special election. By a resolution of November 19, 1912, the election was fixed for December 17, 1912. The charter provides that a resolution shall be presented to the mayor for approval before it takes effect, and that it shall be published

[1] Reported in 142 N. W. 1042.          [2] Special term of court.

Note.—The authorities on the power of a municipality to own and operate electric light plants, are reviewed in notes in 14 L.R.A. 268 and 15 L.R.A.(N.S.) 711. And the question of contract to purchase plant for municipal water supply is treated in a note in 61 L.R.A. 46.

As to the right of a municipality to make profit from its water or lighting plant, see note in 24 L.R.A.(N.S.) 290.

Upon the effect of the limitation of municipal indebtedness upon the acquisition of a water supply, see note in 59 L.R.A. 604.

once before it takes effect. The resolution was posted for the full period of 20 days. It was published November 22, November 29 and December 6. It was approved November 25. It is *held* that there was no such irregularity as invalidated the election and that the election of December 19, 1912, was valid.

### Contract and bonds held valid.

7. The contract between the city and the Virginia Electric Power & Water Company for the purchase of the water and light plant is valid; and the bonds of $450,000, issued by the city to provide funds for the payment of the purchase price, are valid obligations of the city.

Action in the district court for St. Louis county against the city of Virginia and its officers to restrain them from executing and delivering an issue of $450,000 of water and light bonds of defendant city; to enjoin them from carrying out a contract between defendant city and Bolger Mosser & Willaman for the sale of such bonds; and to restrain defendants from carrying out the contract of purchase of a water and light plant with the Virginia Electric Power & Water Company and paying to it any sum whatsoever as the purchase price of such plant. Plaintiff obtained from a court commissioner a temporary restraining order and an order requiring defendants to show cause why a temporary injunction should not issue. From an order, Hughes, J., discharging the order to show cause and denying plaintiff's motion for a temporary injunction, plaintiff appealed. Affirmed.

*Arnold & Pickering,* for appellant.

*D. D. Morgan, Luther C. Harris* and *John T. Pearson,* for respondents.

DIBELL, C.

This is an appeal from an order of the district court of St. Louis county denying the plaintiff's motion for a temporary injunction against the city of Virginia, and its officers, restraining them from carrying out a contract with the Virginia Electric Power & Water Company for the purchase of the water and light plant in the city, and from issuing bonds of the city in the sum of $450,000 to secure

123 M.—4.

funds with which to pay for such plant, and vacating the temporary restraining order theretofore issued.

1. The city of Virginia has power to acquire a water and light plant by purchase.

Section 96 of the charter provides that the common council shall have power "to purchase, acquire or establish gas, electric and other lighting plants and to furnish gas, heat, power and electricity to persons within or without the city limits on such terms as it may provide; to purchase, procure or establish water works and to provide water for the use and convenience of the inhabitants of the city, or others, and to prescribe and fix the charges for the same and the manner in which the same shall be paid."

Section 145 is as follows:

"The city may acquire or establish water, gas, heat, power and light plants, or either of them, and dispose of the same at will. The city may maintain, enlarge, extend, repair and operate the same. It may furnish water, heat, power and light for all municipal purposes, and may supply the same to the inhabitants of the city, and to such others as it may deem expedient."

Under these sections, without reference to other supporting provisions, the power of the city to purchase is clear.

2. When the city purchases, the price may be fixed by negotiation and agreement.

Section 160 provides as follows:

"The city, when authorized so to do by a two-thirds ($\frac{2}{3}$) majority of the votes cast upon the question, may acquire and thereafter operate any street railway, telephone, water works, gas works, electric light, heating or power works, in or partly within the city, upon paying to the corporation or person owning the franchise the value of such property to be ascertained in the manner provided in this charter for acquiring property under the 'Right of Eminent Domain.' Such vote shall be taken at a special election called for that purpose. The consideration for such works or property shall first be applied to the payment of any encumbrances thereon and the remainder, if any, shall be paid to the owner of said franchise."

The contention made by the plaintiff, that the consideration to be

paid upon a purchase must be ascertained in the manner provided for the acquiring of property under the right of eminent domain, is based upon the section just quoted. It cannot be sustained. This section does not mean that, preliminary to a purchase, there must be an ascertainment of the value of the property in the manner in which value is ascertained in condemnation proceedings authorized by the charter. The charter provides no machinery intended for such use. It is only by isolating the section that such a construction is suggested. Viewed as a method of acquiring a plant by condemnation, the section is subject to a reasonable construction. It does not apply to a purchase.

3. There is no serious question as to the power of the city to issue and negotiate bonds to obtain money with which to pay for a water and light plant which it purchases.

Section 90 confers power upon the city council to issue bonds for city purposes, and, among other purposes, refers to bonds issued to purchase water and light plants. Sections 131 and 134 are in recognition of the right of the city to issue bonds for the purchase of a plant.

4. The plaintiff contends that the city cannot issue water and light bonds in excess of the amount of revenue actually levied and applicable to their payment.

This contention is based upon section 140, which provides as follows:

"Neither the city council of the city nor any officer or officers of said city shall, except as in this charter provided, have authority to issue any bonds or create any debt or any liability against said city in excess of the amount of revenue actually levied and applicable to the payment of such liability."

A construction of the section in harmony with the contention of the plaintiff does not harmonize with other sections of the charter. Throughout the charter there is manifest an intention that the bonds may be paid from the earnings. Sections 131, 134, 149. The defendants are perhaps right in their suggestion that, under this section, bonds can be issued only in the manner prescribed by the charter, and that they may be so issued, and that the requirement of a

prior levy is limited to debts and liabilities which are not evidenced by specifically authorized bonds, and that it should be so construed. The plaintiff is clearly wrong in his construction. Water and light bonds may be issued without a prior levy in anticipation of their payment.

5. The city has authority to issue water and light bonds which shall be general obligations of the city. While the charter contemplates that interest and principal may be paid from earnings, there is no suggested limitation upon the character of the obligation. Sections 131, 134, 149. The case of Uncas National Bank v. Superior, 115 Wis. 340, 91 N. W. 1004, involving street improvement bonds, is not to the contrary.

6. It is contended that the election of December 17, 1912, at which bonds to the amount of $450,000 were authorized, was invalid. This contention is based upon the claim that the notice of election was insufficient.

The charter adopts R. L. 1905, § 223, as to elections. This section requires the notice of a special election to be posted for twenty days. It was so posted. The resolution determining upon an election and fixing the date was passed on November 19, 1912, and was approved by the mayor on November 25, 1912. It was published on November 22, 1912, November 29, 1912, and December 6, 1912.

Section 81 of the charter provides with reference to a resolution, after its passage, as follows:

"It shall then forthwith, before it takes effect, be presented to the mayor for his approval as herein provided. Every ordinance and resolution shall be published once in the official newspaper of the city before it takes effect."

If the resolution had been published on November 25, the day of its approval, no claim against the validity of the election would now be made. It is only upon the assumed fact that the approval must precede a valid publication of the resolution that any irregularity is found.

Not every irregularity invalidates an election. The record shows that all proceedings relative to the acquisition of the water and light plant were open. The public were fully informed and public dis-

cussion was invited. There was a campaign of publicity. There is no suggestion of fraud or wrongdoing. There is no intimation that the posted notice was not as effective as if the resolution had been approved on November 22, when it was first published, or as if published on November 25, immediately after approval. There is no apparent possibility that a full and fair vote was not had, nor that any one was misled. The people of Virginia have expressed decisively their wish that the water and light plant be purchased, and that the $450,000 of bonds be issued. To hold that the election is invalid, upon grounds no more serious than those suggested, is sacrificing things of substance, important to the people of Virginia, to a harmless irregularity. We do not at all relax the rule that municipalities must observe the requirements of the law; but we are within the principle of the cases when we hold that so slight an irregularity should not be allowed to frustrate the fairly expressed will of the voters. State v. Bernier, 98 Minn. 1, 38 N. W. 368; Janeway v. City of Duluth, 65 Minn. 292, 68 N. W. 24; Lodgord v. City of East Grand Forks, 105 Minn. 180, 117 N. W. 341; Soper v. County of Sibley, 46 Minn. 274, 48 N. W. 1112; Hankey v. Bowman, 82 Minn. 328, 84 N. W. 1002; Elwell v. Comstock, 99 Minn. 261, 109 N. W. 113, 698, 7 L.R.A.(N.S.) 621, 9 Ann. Cas. 270.

7. We have considered all of the contentions of the plaintiff, essential to a decision, and have given them the careful attention which the importance of the case demands. Some questions, referred to in the briefs and argued orally, have not been considered. On the first Monday in January, 1911, the city of Virginia, by virtue of the provisions of R. L. 1905, § 746, and as a result of the Federal census of 1910, which showed the city's population to be more than 10,000, became a city of the third class, having before been a city of the fourth class. Having reached the conclusion that the contract and the bonds are valid under the home rule charter, it is unnecessary to consider whether the effect of the act of March 30, 1911 (c. 73, p. 89, Laws 1911), basing classification on the last state census, was to make the city again a fourth class city, nor what was the effect of the act of April 18, 1911 (c. 200, p. 255, Laws 1911) relative to the Federal census, nor the effect or application of Laws

1905, p. 527, c. 334, referring to the acquisition of water plants by cities of the fourth class, nor of Laws 1905, p. 127, c. 105, referring to the acquisition of water and light plants by cities of the third class. Nor is it necessary to consider the applicability or validity of the curative statute of March 20, 1913 (Laws 1913, p. 74, c. 89). Questions bearing upon the matters just recited are not considered, and we have no opinion upon them. Finding the contract and bonds valid under the city's home rule charter, we stop.

We hold that the contract with the company is valid and that the $450,000 of bonds are valid and legal obligations. The city should now be allowed to issue the bonds and conclude the purchase. The parties have stipulated that this hearing be final. Upon the going down of the mandate, judgment on the merits in favor of the defend-ants should be entered in conformity with the stipulation.

Order affirmed.