# WILLIAM J. OLSEN AND OTHERS v. CITY OF HOPKINS.

149 N. W. (2d) 394.

March 10, 1967—No. 39,817.

*J. E. Brill, Jr.,* and *Brill & Brill,* for appellants.

*Joseph C. Vesely* and *Vesely, Otto & Miller,* for respondent.

ROGOSHESKE, JUSTICE.

The action under review challenges the validity of Zoning Ordinance No. 131 adopted in 1956 by the city of Hopkins which, as a comprehensive revision of the city's zoning plan, reduced an area classified for commercial use in the block located at the southeast corner of the intersection of Blake Road, which runs north and south, and Excelsior Avenue, which runs east and west. An irregular tract of land lying in the northwest corner of the block referred to above, described by metes and bounds, with a frontage extending from the northwest corner 166.25 feet east along Excelsior Avenue and 177.4 feet south along Blake Road, was affected by this rezoning. The commercial-use area in the northern part of the block, originally so classified in 1949 to a depth of 250 feet measured south along Blake Road, was reduced, leaving, it is claimed, only the northerly 74 feet so classified. The subject tract is owned in fee by appellants-intervenors, who purchased it in 1962 for $29,500, 6 years after the commercial-use area of the block was reduced by the zoning ordinance. In 1964, plaintiff-appellant, a land developer, was granted an option to purchase the tract for $55,000. Shortly thereafter he entered into a contract to sell the northerly 113 feet of the tract for $70,000 to Socony Mobil Oil Company, Inc., for the construction of a gasoline filling station. He also planned to use some part or all of the remaining southerly portion of the tract for the construction and operation of a "dairy store."

In his efforts to carry out his development plan, plaintiff applied for the necessary building permits and a special-use permit to construct and operate the gasoline station, which applications presumably indicated that all of the tract was to be used for commercial purposes. The ap-

plications were denied both by the city Zoning and Planning Commission and the city council. Essentially, these denials were based upon the ground that the 1956 rezoning reduced the commercial zone of the block to the point where the proposed use of the tract would extend into the area zoned exclusively for residential purposes, that area being part of a large residential area known as Interlachen Park. An application to extend or "adjust" the depth of the commercial zone to permit the proposed use was also denied.

At the trial of this action before the court, plaintiff and intervenors (hereinafter referred to as plaintiffs) sought to establish (1) that Ordinance No. 131, in so far as it reduced the commercial zone of the tract, was arbitrary, capricious, and unreasonable, and therefore invalid; (2) that the requirement of publication of the zoning map adopted as a part of the ordinance was not met because the print of the map as it appeared in the newspaper was so illegible as to afford no visual knowledge of the land-use allocation—thus, it is claimed, rendering the ordinance ineffective as to plaintiffs' property; and (3) that, if Ordinance No. 131 is found valid and effective, the commercial zone of this block delineated on a readable official map on file in the clerk's office extends to a depth of "at least 125 feet" south of Excelsior Avenue measured along Blake Road according to a scale placed thereon—thus entitling plaintiffs to carry out their proposed commercial use of the property by securing the necessary permits, which, except for the residential-use restriction, the city appears willing to issue.

The trial court found (1) that the 1956 rezoning "was not arbitrary or capricious, and was necessary to protect a good district of homes from a creeping blight by growth from the commercial and industrial areas approaching it"; (2) that despite the illegible publication of the zoning map, the ordinance was not invalid because a legible map measurable according to scale was on file in the city clerk's office and readily available for inspection; and (3) that the effect of the 1956 rezoning was to enlarge the residential zone of the block in which plaintiffs' tract lies, leaving only 74 feet of the block measured south from Excelsior Avenue along Blake Road commercially zoned.

The record before us contains a multitude of exhibits, statements of

counsel, and colloquies between counsel which, with the oral testimony, reveal that on January 18, 1949, the city adopted Ordinance No. 8, its first comprehensive zoning ordinance. This ordinance covered all of the property in the city and included a classification for commercial use of all of plaintiffs' tract, zoning the block in which it was located commercial to a depth of 250 feet measured as noted above. The remainder of the block and a large adjoining area were zoned residential. As noted, plaintiffs' tract lies in what is known as Interlachen Park comprising 120 acres of land (the southeasternmost corner of the city) bounded on the east by Meadowbrook Road and a public golf course, on the west by Blake Road and Blake School, on the south by the village of Edina, and on the north by Excelsior Avenue. North of Excelsior Avenue the area of the city is classified and used for commercial and light industrial purposes. Except for the small area including plaintiffs' tract in the northwesternmost block of Interlachen Park, all of Interlachen Park has always been used, developed, and zoned for residential purposes. Within Interlachen Park there are approximately 270 single-family homes, the bulk of which have valuations between $28,000 and $38,000. Over half of the homes were built prior to 1949. However, residential construction advanced markedly between 1949 and 1951 and continued through 1956, shortly after which almost all available land was utilized for residential purposes, the area developing into what the court declared was "one of the finer residential districts in the Minneapolis suburbs." Except for one church, one 2-story 7-apartment building, and one double bungalow (both near plaintiffs' tract), and a building on plaintiffs' tract (housing a small repair shop and a 1-story insurance agency office), the use of all of Interlachen Park is devoted to single-family residences.

The city of Hopkins has had a rapid residential, commercial, and industrial growth during the past 20 years. Excelsior Avenue has grown strongly commercial and light industrial, primarily from the business district easterly toward Blake School and plaintiffs' tract. This use and development continues on the north side of the avenue across from Interlachen Park westerly and beyond. This growth includes warehouses and business centers, which contribute to the heavy traffic at the inter-

section of Excelsior Avenue and Blake Road. At this intersection there is a sizable Shell Oil station on the southwest corner, a large Skelly Oil station on the northwest corner, and at the time of trial the northeast corner was being developed by Hansord Pontiac for a large used-car lot. Thus, the north side of Excelsior has grown and developed solidly commercial. However, Interlachen Park on the south side of the avenue is, as the court found,—

"* * * buffered almost all the way from the side of the apartment house to the public golf course with tall ornamental bushes and trees. * * * Any changes over the years have been solely in the direction of building more homes and in buffering against interference by commercial growth."

In 1951 the city of Hopkins amended Ordinance No. 8 by adopting Ordinance No. 67, its first revision of the 1949 zoning ordinance. The extent of this revision is not disclosed by the record except that plaintiffs' tract remained zoned commercial to the extent provided by Ordinance No. 8. On July 7, 1956, Ordinance No. 131, a comprehensive revision of the basic zoning plan, was passed and thereafter became effective by publication on July 19. Included was the rezoning challenged by plaintiffs which enlarged the southerly residential portion of the block and left, as the court found, only the northerly "74 feet" of the block and plaintiffs' tract classified commercial.

Following what perhaps is the common form employed in drafting zoning ordinances and the form used in Ordinances Nos. 8 and 67, Ordinance No. 131 did not contain provisions delineating the boundaries of the various use districts by metes and bounds. Rather, a zoning map was incorporated as a provision of the ordinance as follows (§ 2, subd. 2):

"The boundaries of these districts are delineated on a map entitled 'Second Revised Zoning Map of Hopkins, Minnesota', which map, with all explanatory matter thereon, is hereby adopted with and becomes a part of this ordinance, and from and after the effective date of this ordinance said map shall be the official zoning map of Hopkins, and shall supersede and take the place of the zoning map which was a part of Ordinance Number 8 on the date of its adoption on January 18, 1949,

and also supersedes and takes the place of the 'First Revised Zoning Map of Hopkins, Minnesota', which became effective September 1, 1951."

The map introduced as an exhibit is a "scale" map, the legend indicating a scale of 400 feet to the inch. When the ordinance was published, the map was so reduced in size that it was impossible to ascertain from the map printed in the newspaper the extent of the commercial and residential area of the block containing plaintiffs' tract. The official map, however, clearly delineates the commercial and residential areas of the block in question. Although the map portrays only the blocks and adjoining streets in the Interlachen Park area, a line running east and west is drawn across the full width of the subject block dividing the respective areas. The commercial area, in accordance with the legend denoting the various use districts, is shown by horizontal lines. The north-south length of the residential area is stated to be "371'." No footage is indicated as to the depth of the commercial area, but it appears to be readily ascertainable by measuring with a ruler and applying the scale of the map. By this method the depth of the commercial zone scales out to be 129 feet, the total north-south length of the block scaling 500 feet.

For reasons which are not discernible from the record, the court did not make this measurement. It may be that plaintiffs failed to request the court to do so, or if they did, the request was not clearly made, being overshadowed by plaintiffs' attack upon the validity of the ordinance. Since plaintiffs make no precise claim concerning the depth of the commercial zone, claiming only that it is "at least 125 feet," surely the court had a right to expect a witness to be called for the purpose of making this measurement. Strangely enough, throughout the trial the depth of this commercial zone was referred to as being 74 feet, and counsel for the city understandably assumed this distance was not disputed and that plaintiffs had agreed and stipulated thereto. That such a stipulation was never made is now conceded. While the city suggests that a survey of the block would show that only about 74 feet of the block remains in the commercial zone,[1] plaintiffs called no witness to testify to any measure-

---

[1] Plaintiffs introduced an engineer's survey of this tract, but neither the depth of the commercial zone nor the length of the block is ascertainable from it.

ments of the depth of the two zones either by reference to the map or upon the ground. Whatever may have been the misunderstanding at trial, it cannot be disputed that there is no evidence whatsoever to support the court's finding that the depth of the commercial zone is 74 feet.

Since the extent of the residential restrictions on plaintiffs' tract has significant bearing on the other claims made by plaintiffs, we deem it advisable to first dispose of the question of the depth of the commercial zone. It is inescapable that the question must be determined by reference to the map, with any uncertainty to be resolved in favor of the property owners and against any implied enlargement of the more restrictive residential zone.[2]

 The map was adopted with and as a part of the ordinance. Its effect in determining the boundaries of the zoning districts is no less than if the boundaries were expressed by metes and bounds in the body of the ordinance. Whatever form is employed, it is a fundamental rule that in establishing boundaries of use districts they must be fixed and expressed with sufficient certainty so that an owner can ascertain the restrictions imposed by reference to the zoning ordinance without resort to extrinsic proof.[3] By reference to and use of the scale of the map, as the city council unquestionably intended, the block measures 500 feet in length. The commercial zone covers the full width of this block and extends southerly from Excelsior Avenue a distance of 129 feet. The adjoining residential zone covers the remaining area of the block and measures,

---

[2] Ordinance No. 131, § 2, subd. 3, provides: "Where any uncertainty exists with respect to the boundaries of any of the aforesaid districts as shown on the zoning map, the following rules shall apply:

"(A) Where district boundaries are indicated as approximately following street, highway, railroad or alley lines, such lines shall be construed to be said boundaries; and

"(B) Where district boundaries are indicated as approximately following lot lines, such lot lines shall be construed to be said boundaries."

This provision is of no aid in the present case since the boundary in question is not indicated as following any such lines.

[3] Auditorium, Inc. v. Board of Adjustment, 47 Del. 373, 91 A. (2d) 528; Slattery v. Township of Caldwell, 83 N. J. Super. 317, 199 A. (2d) 670; Village of Westlake v. Elrick, 52 Ohio L. Abs. 538, 83 N. E. (2d) 646.

as expressly indicated on the map, 371 feet. Since plaintiffs are not precise in claiming the footage referred to, we believe these measurements must be made by a qualified witness. Nevertheless, it is difficult to comprehend how there can be any uncertainty as to the area of these adjoining zones in this block as delineated upon the map. Since the survey of the subject tract shows that it extends southerly along Blake Road a distance of 177.4 feet, it follows that any commercial use of the northerly 129 feet thereof is permissible. However, as the city strongly suggests and plaintiffs apparently suspect, a land survey is likely to establish that the block is not 500 feet in length, and therefore a problem would arise as to which of the zones would be required to absorb the shortage. It could be argued that, since the residential area is expressly designated to be 371 feet in length, the intention of the council was to leave only that part of the block remaining, whatever it proves to be, classified commercial. But such an intention would be inconsistent with the 500-foot length of the block as drawn upon the map. If the block is not 500 feet, the boundaries of the respective areas are not fixed or expressed with sufficient certainty to permit an owner to ascertain the restrictions imposed upon his property by reference to the ordinance alone.[4] Further, the argument offends against the rule of extending the residential zone by implication.

Zoning ordinances which restrict an owner's common-law right to lawfully use his property are to be strictly construed, and where doubt exists as to the intent of the enacting body, a construction must favor the owner and disfavor any implied extension of a restriction upon his property.[5] Applying this rule would require that any uncertainty in the depth of the commercial zone revealed by a land survey would have to be resolved in favor of the plaintiffs and would result in imposing upon their property the least restrictive use. Since the essential facts were not pre-

---

[4] It was suggested, as perhaps the record indicates, that the line separating the two zones was drawn in accordance with the then existing use of the respective areas of the block.

[5] Murphy Motor Sales, Inc. v. First Nat. Bank, 122 Vt. 121, 165 A. (2d) 341, 82 A. L. R. (2d) 985; Toulouse v. Board of Zoning Adjustment, 147 Maine 387, 87 A. (2d) 670.

sented, we can only suggest the application of the rule should a survey require it. A remand is necessary to determine the depth of the commercial zone and to resolve, if necessary, any uncertainty between the boundaries delineated upon the map and revealed by a land survey. Upon this record, we hold only that the boundaries fixed and expressed upon the land-use map as a part of the ordinance control the extent to which the area of plaintiffs' property is classified commercial.

■ We agree with the trial court's determination that Ordinance No. 131 is a reasonable exercise of the city's power to revise its basic zoning plan and that its effect upon plaintiffs' tract is neither arbitrary nor capricious.

No rule of zoning law is better settled than that a municipality may from time to time amend, supplement, revise, or repeal the restrictions imposed by its comprehensive zoning ordinance.[6] The power to amend and revise, like the power to enact the original plan, must be exercised reasonably in furtherance of the public health, safety, and welfare.[7] Its exercise must also conform to the procedural requirements of the enabling statute or city charter.[8] The validity of any revision of or amendment to the basic plan must be determined by the same rules as those applied in testing the validity of the original comprehensive ordinance.[9]

As was well stated in Rodgers v. Village of Tarrytown, 302 N. Y. 115, 121, 96 N. E. (2d) 731, 733:

"While stability and regularity are undoubtedly essential to the operation of zoning plans, zoning is by no means static. Changed or changing conditions call for changed plans, and persons who own property in a

---

[6] Rodgers v. Village of Tarrytown, 302 N. Y. 115, 96 N. E. (2d) 731; Keaton v. Oklahoma City, 187 Okla. 593, 102 P. (2d) 938; Keller v. City of Council Bluffs, 246 Iowa 202, 66 N. W. (2d) 113, 51 A.L.R. (2d) 251.

[7] Kiges v. City of St. Paul, 240 Minn. 522, 62 N. W. (2d) 363; Bohan v. Village of Riverside, 9 Ill. (2d) 561, 138 N. E. (2d) 487.

[8] Alexander v. City of Minneapolis, 267 Minn. 155, 125 N. W. (2d) 583.

[9] Pearce v. City of Youngstown, 100 Ohio App. 22, 135 N. E. (2d) 430; Bohan v. Village of Riverside, 9 Ill. (2d) 561, 138 N. E. (2d) 487; Trust Co. of Chicago v. City of Chicago, 408 Ill. 91, 96 N. E. (2d) 499; Walker v. Town of Elkin, 254 N. C. 85, 118 S. E. (2d) 1.

particular zone or use district enjoy no eternally vested right to that classification if the public interest demands otherwise."

Where a change made by a revision of the basic plan is compatible with and in furtherance of the basic comprehensive plan, the determination of how areas or properties shall be classified or reclassified is a legislative function, not subject to interference by the courts unless shown to be arbitrary, confiscatory, or discriminatory.[10]

Without detailing the evidence, we are persuaded that the court was justified in concluding that the 1956 enlargement of the residential zone of the subject block, including plaintiffs' tract, effected by Ordinance No. 131 was reasonable. It is sufficient to note that such was the use of the area at the time that the enlarging of the residential zone was consistent with the growth, development, and protection of the residential character of the Interlachen Park area and compatible with and in furtherance of the city's basic zoning plan. In our opinion the evidence sufficiently supports a determination that the effect of the revising ordinance upon plaintiffs' tract was not arbitrary, confiscatory, or discriminatory.[11]

■ Nor can we agree under the facts of this case that Ordinance No. 131 or that part of it which increased the residential restrictions of plaintiffs' tract is invalid because of improper publication.

As we expressly held in W. H. Barber Co. v. City of Minneapolis, 227 Minn. 77, 34 N. W. (2d) 710, a provision of a city charter which requires publication of an ordinance [12] is mandatory, and a failure to publish a zoning map made a part of the ordinance renders the ordinance ineffective. However, unlike the fact situation in Barber, a copy of the official zoning map, although illegible so far as plaintiffs' tract was concerned, was published. Moreover, the official map, admittedly legible, was

---

[10] Kiges v. City of St. Paul, 240 Minn. 522, 62 N. W. (2d) 363; Ward v. Montgomery Township, 28 N. J. 529, 147 A. (2d) 248; Walker v. Town of Elkin, *supra;* Hadley v. Harold Realty Co. 97 R. I. 403, 198 A. (2d) 149.

[11] Olsen v. City of Minneapolis, 263 Minn. 1, 115 N. W. (2d) 734; Kiges v. City of St. Paul, *supra.*

[12] Section 3.04 of the Hopkins City Charter requires publication of all ordinances.

on file in the city clerk's office and readily available at all times for inspection. No proof was submitted tending to establish that any owner of property affected by the 1956 revision or any member of the public was in any way misled or prejudiced by the illegible publication of the map.

The obvious purpose of publication is to give the public notice of every provision of an ordinance.[13] This purpose is not served where publication of a map forming part of an ordinance does not give visual knowledge of the boundaries of use districts established by the ordinance. While we are inclined to agree that the printing of an illegible zoning map does not comply with the requirement of publication, we have been cited no authority which holds that such publication alone renders the ordinance or any part thereof ineffective. It has been held that a failure to publish a zoning map does not render an ordinance void where the ordinance made reference to an official map, its place of filing, and its availability for inspection. City of Alamogordo v. McGee, 64 N. Mex. 253, 327 P. (2d) 321.[14]

We believe that where no member of the public or owner of property affected is prejudiced by imperfect compliance with the requirement of publication of the map, and the ordinance refers to an official map readily accessible which affords an adequate visual knowledge of the land-use classification, a publication of an illegible map should be regarded as a mere irregularity which can be corrected by a republication. Since we understand the map has been republished, we hold that publication of the map under the circumstances of this case was not fatal to the validity of Ordinance No. 131.

Affirmed in part and remanded for further proceedings as stated in the opinion. No taxable costs or disbursements are allowed either party.

MR. JUSTICE PETERSON, not having been a member of this court at at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[13] Town of Burnsville v. City of Bloomington, 268 Minn. 84, 128 N. W. (2d) 97; City of St. Paul v. Robinson, 129 Minn. 383, 152 N. W. 777.

[14] Cf. Backus v. City of Virginia, 123 Minn. 48, 142 N. W. 1042.