MINNESOTA DEPARTMENT OF NAT-
URAL RESOURCES, Appellant,

v.

CITY OF WATERVILLE and Joseph G.
Poehler, Respondents.

No. C6-84-481.

Court of Appeals of Minnesota.

Sept. 11, 1984.

Hubert H. Humphrey, III, Atty. Gen., A.W. Clapp, III, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Michael T. Keogh, Christian, Spartz & Keogh, Le Center, for respondent City of Waterville.

John H. McLoone, IV, Waseca, for respondent Joseph G. Poehler.

Considered and decided by POPOVICH, C.J., and FOLEY and WOZNIAK, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

The Minnesota Department of Natural Resources appeals the judgment of the trial court finding the "shoreland ordinance"[1] void as uncertain and indefinite. We affirm.

## FACTS

Waterville is a community of approximately 1,750 people located in southern Le Sueur County. The city is built between the eastern shoreline of Lake Tetonka and the western shoreline of Lake Sakatah. These two lakes are connected by the Cannon River which runs through the city, and each has several thousands of feet of shoreline within the municipal boundary limits. On the south side of Waterville, there is a small waterway known as the Whitewater Creek which enters the city near the southwest city boundary and travels in a southeasterly direction for several

---

1. The City of Waterville's "Shoreland Ordinance" is the subject matter of this action, specifically the Zoning Ordinance Section 23, "S" Shoreland District, The Waterville City Code of 1982, page 157, et seq., enacted May 1, 1982, filed July 26, 1982, in the office of the Le Sueur County Recorder, in Book 45 of Miscellaneous, pp. 263–436.

blocks outletting into Lake Sakatah. The Whitewater Creek within the city is a small, nonmeandering water course not unlike a farm drainage ditch. In fact, a substantial portion of the flowage through the Whitewater Creek results from farm drainage systems.

Respondent Joseph G. Poehler owns land adjacent to the Whitewater Creek just south of the city's small business district. In early 1983, Poehler filed with the Waterville City Administrator plans for a single-story seven-unit senior citizens' apartment building. Hearings were held to rezone the property from a single-family residential use zone to a use zone permitting a multiple-family dwelling such as Poehler proposed. The rezoning request was granted and a building permit was issued by Waterville.

Poehler commenced construction of the building and shortly thereafter filed an application for a permit with the Department of Natural Resources to riprap the bank of the Whitewater Creek adjacent to the building under construction. When agents of the DNR came to view the property in response to Poehler's permit application, questions were raised regarding noncompliance with the city's municipal shorelands ordinance and the flood plain ordinance.

The DNR's questions led the city to discover that application of the shorelands and flood plain ordinances had not been properly addressed in the prior building permit application procedure. The city directed Poehler to stop construction. He had expended approximately $50,000.

After extensive engineering studies and hearings participated in by all parties to this proceeding, the city's flood plain map was amended to permit continued construction of the building within the flood plain district, it having been determined that the elevation of the building was sufficiently high and in a negative flowage area so as to comply with the flood plain ordinance.

Upon the request of the city, Poehler filed an application for the requisite variance from the municipal shoreland ordinance.

Hearings were again held and participated in by each of the parties to this appeal. The city granted the required variance from the shoreland ordinance to permit continued construction.

At the time of the variance hearing, the city discovered, for the first time, that a shoreland boundary map required by the text of the ordinance had never been prepared; and, in fact, was not in existence.

In 1981, the City of Waterville, as part of a municipal codification, employed a consulting firm to redraft the then existing City Zoning and Subdivision Ordinance. In addition therewith, the city requested said firm to draft a shoreland ordinance. The text of the ordinance was duly approved and enacted on May 1, 1982, without the knowledge that the map required and referred to in the text of the ordinance was never prepared and, in fact, was not in existence.

The city frankly admits it cannot administer this ordinance without clearly defined boundaries.

Appellant Minnesota Department of Natural Resources (DNR) began this action seeking a declaration that the variances were void because of the lack of hardship, and seeking an order that Poehler cease construction. Poehler moved for summary judgment dismissing the lawsuit and declaring the ordinance void on the grounds that a map referenced by the ordinance did not exist. The trial court granted summary judgment declaring the "shoreland ordinance" void.

## ISSUE

Whether Section 23 (Shoreland Ordinance) of the City of Waterville's Zoning Ordinance is so vague and uncertain as to be void.

## ANALYSIS

Section 23 governs development and other activities upon shorelands within the city. Subdivisions C and D of Section 23 provide:

Subd. C. *Boundaries.* The boundaries of the Shoreland District are established within the following distances from the ordinary high water mark of the surface water depending on the size of the surface water *as indicated on the Waterville Shoreland District Map.* * * *

Subd. D. *Shoreland Classification. The surface waters affected by this Section and which require controlled development of their shoreland (shoreland district) are shown on the map designated as the official "Shoreland Map of the City of Waterville" which is properly approved and made a part of the Ordinance* and filed with the Zoning Administrator. * * *

(Emphasis added.)

The ordinance refers to a map which was never prepared and never published as part of the ordinance. The trial court determined that, in the absence of the map, the ordinance was void, and further found that publication of the map was a condition precedent to delineating the regulatory district and that the ordinance, without the map, is so uncertain and indefinite so as to render the attempted regulation invalid.

The DNR contends the boundaries can be ascertained by language in the ordinance enumerating distances from lakes and streams. The weakness of this argument is that the size of surface water and the distance of the extension from those shorelines is referenced in the text of the ordinance to the "Waterville Shoreland District Map" which never existed.

Further, the text indicates variances of distances depending upon topographical characteristics and elevations. The ordinance, in reality, states distances from lakes and streams shown on a map that doesn't exist.

■ The boundaries of any municipal land use district must be defined and expressed with certainty. *Olsen v. City of Hopkins,* 276 Minn. 163, 149 N.W.2d 394 (1967).

Zoning ordinances which restrict an owner's common law right to lawfully use his property are to be strictly construed, and where doubt exists as to the intent of the enacting body, a construction must favor the owner and disfavor any implied extension of a restriction upon his property. *Id.* at 170, 149 N.W.2d at 399.

■ In this case, the facts go farther. Here, the ordinance is not subject to multiple constructions; rather, it cannot be construed at all. The perimeters of the shoreland district are not sufficiently defined by the ordinance without the intended map. Further, the map is required to determine which bodies of water are regulated by the ordinance. The City of Waterville has admitted it cannot administer the text of its regulatory shoreland ordinance without the map. Finally, the law requires that the map be published before this ordinance can take effect. *W.H. Barber Co. v. City of Minneapolis,* 227 Minn. 77, 34 N.W.2d 710 (1948).

To saddle a landowner with an unintelligible restriction, which the governing body admits it cannot enforce, would do violence to the rights of the landowner.

We have further considered DNR's argument that the flood plain map, which is part of a separate flood plain ordinance, will suffice. Since the flood plain district and the boundaries of a shoreland district are not coextensive, and the flood plain map cannot be substituted to determine the borderlines of the shoreland district, we are not persuaded.

## DECISION

The City of Waterville cannot enforce regulations of the shoreland zoning district unless the perimeters of the land to be regulated are more clearly defined. Accordingly, the order of the trial court granting summary judgment is affirmed.

Affirmed.