Charles R. CROTTY and Angela K. Crotty, Plaintiffs and Appellees,

v.

The CITY OF DEADWOOD; Thomas M. Blair, as Mayor of the City of Deadwood; Ken Hawki, as Building Officer of the City of Deadwood; and Joe Mack, Defendants and Appellants.

Nos. 16178, 16186.

Supreme Court of South Dakota.

Considered on Briefs Jan. 11, 1989.

Decided May 17, 1989.

John J. Delaney of Banks, Johnson, Johnson, Colbath & Huffman, Rapid City, for plaintiffs and appellees.

Gene R. Bushnell of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, Steven M. Christensen of Mattson, Rachetto & Christensen, Rapid City, for defendants and appellants City of Deadwood, Thomas M. Blair and Ken Hawki.

Jacqueline M. Rasmussen of Nelson & Harding, Rapid City, for defendant and appellant Joe Mack.

McKEEVER, Circuit Judge.

PROCEDURAL HISTORY/ISSUES

Charles and Angela Crotty (Crottys) initiated actions for injunctive and declaratory relief against the City of Deadwood (City) and Joe Mack (Mack) seeking to halt Mack's construction of a motel addition on property nearly adjacent to Crottys' resi-

dence and to declare the construction a nuisance in violation of City's Ordinance 569, which purportedly zoned the area medium density residential. A temporary restraining order was issued and Crottys' action followed. Mack's cross-claim against City was settled prior to trial and judgment was entered in favor of Crottys and against Mack and City. Mack's and City's appeals were consolidated. Mack's appeal alleges the following trial court errors:

1) The trial court erred in finding that Zoning Ordinance 569 was valid.
2) The trial court erred in selecting Plaintiff's Exhibit 2 as the proper zoning map for the City.

City's appeal alleges error # 2 only. After a careful review of the record, we conclude the trial court's decision was not clearly erroneous and affirm.

## FACTS

City adopted Zoning Ordinance 569 in March 1971. The ordinance referred to an "Official Zoning Map" which was incorporated into the ordinance. The map was identified as bearing the mayor's signature, City's seal, the city auditor's attestation, and a certification of its official status. The ordinance further provided that while copies of the map may be made or published, the official zoning map was to be the *final authority* as to zoning statutes and was to be located "in the office of the city clerk (or specify other place easily accessible to the public.)". The map was never published and was displayed in the city council's meeting room.

Sometime after its adoption and before this case arose, the ordinance was forgotten [1] and the map literally faded out of existence as the result of age and the elements. At some point the map was put into storage, along with other maps and preliminary zoning plans. Questions arose with respect to the Official Zoning Map in 1986 when Mack sought to expand his mo-

tel to provide six additional units to his 11-unit motel, which he originally purchased in 1968. The addition was built on adjacent property also owned by Mack. Crottys' residence is adjacent to the lot on which Mack began building the six units.

Mack contacted the city building inspector, who apparently assured him the building permit would be issued since no zoning ordinance was in effect. Mack began building within the next two days, and within four days was contacted by the building inspector who informed him that a map had been found which brought into question the proper zoning status of his property. Mack, on advice from his attorney, continued building until an injunction was served. Mack's building permit was subsequently revoked. Crottys objected to the addition because of their position that commercial buildings were prohibited in medium residential zoning districts.

## DECISION

### I.

### VALIDITY OF ZONING ORDINANCE 569

Mack attacks the validity of Zoning Ordinance 569 on several grounds: 1) City failed to publish the Official Zoning Map; 2) the Official Zoning Map was not maintained in the city clerk's office; 3) the Official Zoning Map was illegible at the time of the dispute; and 4) City's actual growth between 1971 and 1986 rendered the area a general commercial area.

■ Mack's strongest argument—that failure to publish the Official Zoning Map is fatal to the validity of the ordinance—must give way to the rule that in the absence of a statute providing otherwise, maps or other addenda to an ordinance need not necessarily be published when the ordinance makes reference to the official map, its place of filing, and its availability

---

**1.** Mayor Thomas Blair testified that when the present litigation arose, he was not aware of the existence of the zoning ordinance, or any amendments to it. Ken Hawki, the city building official, testified that the "general consen-

sus" when he took over as building inspector, was that there was no zoning map or ordinance. He utilized the Uniform Building Code whenever application was made for a building permit.

for inspection by the public. *See, e.g., City of Alamogordo v. McGee,* 64 N.M. 253, 327 P.2d 321 (1958), (affirming a judgment upholding the validity of the ordinance and adopting the view that to invalidate the ordinance because of the omission would sacrifice substance to form.)

The Minnesota Supreme Court cited *McGee, supra,* in *Olsen v. City of Hopkins,* 276 Minn. 163, 149 N.W.2d 394 (1967), where an illegible map did not comply with the requirement of publication, such publication alone did not render the ordinance ineffective.[2]

While there is authority on both sides of the publishing requirement question respecting zoning maps, the underlying inquiry appears to be whether the "exact wording of the statute providing for the notice" of a zoning ordinance requires publication of a map. *See,* Annotation, *Validity and Construction of Statutory Notice Requirements Prerequisite to Adoption or Amendment of Zoning Ordinance or Regulation,* 96 A.L.R.2d 449 § 24(a) (1964). This inquiry distinguishes our case from the line of cases holding that publication of the zoning map is required. In *Deans v. West,* 189 Neb. 518, 203 N.W.2d 504 (1973), for example, R.R.S. 23–114.03 (1943) provided:

> An official map or maps indicating the districts and regulations shall be adopted and within fifteen days after adoption of such regulations or maps, they shall be published in book or pamphlet form or in a legal newspaper published once in and of general circulation in the county.

*Id.* at 507–508. A statutory provision requiring that an official zoning map adopted by a county board shall be published in book or pamphlet form or in a legal newspaper is mandatory. *Id.*

South Dakota has no statute comparable to the one cited in *Deans, supra.* In fact, SDCL 9–19–7, referring to codes or comprehensive regulations adopted into an ordinance and incorporated by reference, has been interpreted to permit exhibits referred to in an ordinance merely to be available for examination, rather than requiring that they be published. *See Clem v. City of Yankton,* 83 S.D. 386, 160 N.W.2d 125 (1968), (a bonding ordinance was held valid even though the lease and purchase contract referred to in the ordinance as exhibits were not published, but were available for examination.)

In examining a Wisconsin statute on publication of ordinances, the court in *City of Lake Geneva v. Smuda,* 75 Wis.2d 532, 249 N.W.2d 783 (1977), determined that the minimum requirements of the statute did not include publication of a map. Thus, in the absence of express statutory authority requiring that a map be published, and not merely incorporated into an ordinance by reference, no such requirement will be imposed.

We hold that where a zoning ordinance is otherwise valid, failure to separately publish an official zoning map does not render the ordinance invalid where the map is accessible to the interested public. Here, the map was displayed in the city council's meeting room. It was available for inspection. The validity of an ordinance should not turn on which room a map was displayed in the city hall.

■ Finally, this issue may be disposed of in favor of Crottys by rejecting the remaining two grounds for invalidation. The trial court did not err in concluding that the fading of the official zoning map did not invalidate the ordinance, particularly where a reasonable facsimile was available and where the faded map was deter-

2. *Olsen* distinguishes *W.H. Barber Co. v. City of Minneapolis,* 227 Minn. 77, 34 N.W.2d 710 (1948), which held that a provision of a county charter which requires publication of an ordinance is mandatory, and a failure to publish a zoning map made a part of the ordinance renders the ordinance ineffective. However, as pointed out in *Raymond v. Baehr,* 282 Minn. 109, 163 N.W.2d 51 (1968), the line of cases requiring publication do not involve the use of the doctrine of incorporation by reference, subsequently enacted at Minn.St. 471.–62 (1945). While *Barber* was a post–1945 case, it does not appear that the court had yet fully adopted the doctrine. The *Baehr* court applied the doctrine, however, and held that where a city charter required publication of ordinances, a building code incorporated by reference into a validly published ordinance was not invalid for lack of publication.

**528**

mined to be genuine. With knowledge that a genuine document existed, but was illegible, it was incumbent upon the trial court to affirm its validity. Because our conclusion is that a valid zoning ordinance is and has been in effect since implemented in the early 1970's, it is unnecessary to address Mack's contention that the actual effect of City's growth rendered the lots in question general commercial.

## II.

### SELECTION OF PLAINTIFF'S EXHIBIT 2 AS THE PROPER ZONING MAP FOR THE CITY

■ City and Mack argue that the trial court failed to use the correct evidentiary standards in selecting a zoning map from among the various exhibits purported to be representative of Exhibit C, the Official Zoning Map. Specifically, City alleges that the trial court failed to weigh conflicting evidence presented by testimony at trial because it was concerned only with a single degree of evidence, i.e., the date on the various maps. In reviewing a trial court's findings of fact, we will not overturn them unless we are left with a definite and firm conviction that a mistake has been made. *In re Proceedings for Deposit in Court,* 417 N.W.2d 187 (S.D.1987). The findings of the trial court indicate that among the evidence considered by the trial court were the following:

15. Maps in existence at the time of the ordinance's enactment.
16. Memories of past city officials as to the nature of the zoning districts on Block 74 of the City.
17–18. The fact that original zoning of the area in question was medium density residential and testimony revealed no amendments to the original zoning scheme.

In synopsizing its decision, the trial court reiterated that in choosing Plaintiff's Exhibit 2 as the map which "best reconstitutes" ... Exhibit C, it was not conferring a "posture of 'Official Zoning Map'" on it.[3] The trial court's choice among the exhibits

cannot be held clearly erroneous in light of the evidence in the record and the facts of this case. We therefore affirm the trial court's judgment selecting Plaintiff's Exhibit 2 as the proper zoning map for the City.

WUEST, C.J., and MORGAN, SABERS and MILLER, JJ., concur.

McKEEVER, Circuit Judge, for HENDERSON, J., disqualified.

---

3. Page 7, Memorandum Decision, incorporated in Finding of Fact 19.