# GEORGE D. ALEXANDER v. CITY OF MINNEAPOLIS AND ANOTHER.

125 N. W. (2d) 583.

December 27, 1963—No. 39,116.

*Keith M. Stidd,* City Attorney, and *D. J. Shama,* Assistant City Attorney, for appellants.

*Brill & Brill,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Appeal from an order denying defendants' motion for amended findings or for a new trial, and from a declaratory judgment that plain-

tiff is entitled to a building permit from defendants for the erection of a 6-story, 38-apartment building on premises owned by plaintiff as hereafter described. Therein the court determined that an amendment to its zoning ordinance adopted by the defendant city on December 14, 1962, wherein such property was rezoned for more restrictive uses, was void insofar as it related to such property; and that a "hold order" issued by the city on July 10, 1953, with respect to any applications for building permits thereon was likewise void.

The findings of the trial court, based upon a stipulation of the parties and evidence adduced at the trial, established the following:

That for at least 10 years prior to the commencement of the action plaintiff has owned certain property in Minneapolis[1] located at the southeast corner of East Calhoun Boulevard and West 31st Street.

---

[1] The legal description of the property is as follows: "All of Lot 14, Block 32, Calhoun Park West of the East 129 feet thereof, also that part of Lot 14, Block 32, Calhoun Park described as follows: Commencing at a point on the North line of said Lot 14, which point is 129 feet West of the Northeast corner thereof; thence Southerly across said lot to a point on the South line of said lot, which said point is 129 feet West of the Southeast corner thereof; thence East on said South line of Lot 14 a distance of one foot; thence northerly in a straight line across said lot to the point of beginning, also

"That part of Lot 13, Block 32, Calhoun Park lying West of a line drawn from a point on the North line of said lot distant 128 feet West from the Northeast corner thereof to a point on the South line of said lot distant 127 feet West from the Southeast corner of said lot, also

"All of Lot 12, Block 32, Calhoun Park except the East 126 feet thereof and except the South 10 feet of said Lot 12 lying Westerly of the East 126 feet of said Lot 12 together with an easement for driveway purposes over a strip of land in said Lot 12 described as follows: Beginning at a point in the South line of said Lot 12 distant 85 feet West of the Southeast corner thereof; thence Northwesterly to a point distant 10 feet North of the South line thereof and 126 feet West of the East line of said Lot 12, said last described course being hereinafter referred to and designated as 'Line A'; thence North parallel with the East line of said Lot 12 to an intersection with a line drawn parallel with and 10 feet at right angles Northerly of said 'Line A' and extension thereof; thence Southeasterly parallel with said 'Line A' and extension thereof to the South line of said Lot 12; thence West

That on November 2, 1962, at the time of plaintiff's application for the building permit described, and for many years before, the property had been zoned for multiple dwellings up to 6 stories in height, but that on July 10, 1953, subsequent to plaintiff's purchase of the property the city through its council had adopted a "hold order" which directed its building inspector not to issue any building permit for the property, pending adoption of a proposed comprehensive rezoning ordinance.

That at the time of plaintiff's application for a building permit to construct a 6-story multiple dwelling on the property the application called for the erection of a structure which would be in strict compliance with the provisions of the zoning ordinance and building code of the city then in effect, with the exception of the "hold order" described.

That notwithstanding this the building inspector had refused to issue such building permit to plaintiff because of such "hold order" and that subsequently on December 14, 1962, the city had adopted a new zoning ordinance which placed plaintiff's property in a residence "C" density classification and which limited multiple dwellings thereon to not more than 2½ stories in height.

That the reasonable market value of plaintiff's property for the purposes authorized at the time of his purchase thereof and on the date of his application for the permit described was the sum of $57,000, while its reasonable market value for a multiple dwelling limited to not more than 2½ stories in height as authorized by the new zoning ordinance was $22,000.

It is conceded by defendants that, on November 2, 1962, but for the existence of the "hold order" described, it was the duty of the building inspector to issue a building permit to plaintiff in accordance with his application and plans therefor submitted by him on that date; and that at the time of the commencement of the present action plaintiff's prop-

on the South line of said Lot 12 to the point of beginning; and together with an easement for driveway purposes over that part of Lot 12 lying Southwesterly of the Northerly line of above described easement and over the North 12 feet of the East 85 feet of Lot 11, Block 32, Calhoun Park, Hennepin County, Minnesota."

erty was zoned for use in accordance with the application for the building permit described.

The trial court's determination included the following:

"That the plaintiff's property had been zoned for the purpose for which he desired to use the same for many years prior to the time he purchased said property approximately ten years ago. That plaintiff purchased said property in reliance upon said zoning desiring to use the same for the erection of apartment buildings of the kind permitted by the ordinance as it then existed."

"That the 'Hold Order' referred to in said stipulation and adopted by the City of Minneapolis was void and without effect and insofar as it purported to be an amendment of the zoning ordinance of the City of Minneapolis it was in violation of the statutes of the State of Minnesota."

"That the defendants are hereby directed to issue to the plaintiff the building permit pursuant to proper plans heretofore and hereafter to be submitted to the Building Inspector of the City of Minneapolis."

On appeal defendants contend that the trial court erred in its determination that defendant city's "hold order" of July 10, 1953, was void; and in its determination that defendant city's ordinance rezoning plaintiff's property to a more restricted classification or use was invalid.

■ We are of the opinion that the trial court was correct in determining that plaintiff is entitled to a building permit for his property in accordance with his application filed with the city building inspector on November 2, 1962, and his plans and specifications therefor. It is not disputed that at the time such application was filed the zoning ordinances then applicable to his property required issuance of the permit and that the only basis for its denial was the "hold order" of July 10, 1953, which the trial court determined to be invalid.

The power of a municipality to amend zoning ordinances must arise out of some legislative enactment delegating such authority to it, either directly or by implication. Here the only statute under which defendant city is authorized to amend its zoning ordinances is Minn.

St. 462.18, and we find nothing therein which would empower it to indefinitely suspend application of its zoning ordinances as to certain property, or to nullify them through the adoption of "hold orders" not having the effect of ordinances.[2] In fact, even if such "hold order" had been adopted as an *ordinance,* its validity would be questionable. As stated in State ex rel. Fairmount Center Co. v. Arnold, 138 Ohio St. 259, 34 N. E. (2d) 777, 136 A. L. R. 840:

"A municipal council may not, by the enactment of an emergency ordinance, give retroactive effect to a pending zoning ordinance thus depriving a property owner of his right to a building permit in accordance with a zoning ordinance in effect at the time of the application for such permit."

See, Downey v. City of Sioux City, 208 Iowa 1273, 227 N. W. 125; State ex rel. Romero v. Viator, 217 La. 239, 46 So. (2d) 256; Krajenke Buick Sales v. Hamtramck City Engineer, 322 Mich. 250, 33 N. W. (2d) 781; State ex rel. Kramer v. Schwartz, 336 Mo. 932, 82 S. W. (2d) 63; Deerfield Realty Co. v. Hague, 8 N. J. Misc. 637, 151 A. 373; Matter of Reade v. Moss, 186 Misc. 156, 58 N. Y. S. (2d) 390; Kline v. City of Harrisburg, 362 Pa. 438, 68 A. (2d) 182; State ex rel. Fairmount Center Co. v. Arnold, *supra.*[3]

In line with the decisions cited and the principles involved, it follows that the trial court's determination should be affirmed.

Further, it is significant that under the proposed plan of defend-

---

[2]The parties have stipulated that the "hold order" in question here is not an ordinance.

[3]In California the court found *constitutional* authority for empowering a municipality to adopt a "hold" or "stopgap" *ordinance.* Miller v. Board of Public Works, 195 Cal. 477, 234 P. 381, 38 A. L. R. 1479, writ of error dismissed, 273 U. S. 781, 47 S. Ct. 460, 71 L. ed. 889. In a few jurisdictions, where "stopgap" devices operated for but a short period of time, the courts have upheld them. Horowitz v. Rath, 9 N. J. Misc. 203, 153 A. 250; Matter of Gramatan Hills Manor, Inc. v. Manganiello, 30 Misc. (2d) 117, 213 N. Y. S. (2d) 617.

Here the "hold order" involved had been adopted on July 10, 1953, some 9 years prior to plaintiff's application for the building permit and had remained in effect since that date.

ant city plaintiff would suffer a substantial diminution in the value of his property without compensation of any kind being made therefor. The court found that the reasonable market value of the property, if used for the purposes authorized at the time of its purchase and on the date of the application for permit, was the sum of $57,000; and that if its use were limited to a 2½-story structure as now proposed, its reasonable market value would be the sum of $22,000, or a loss of $35,000 for plaintiff. We have recently stated that the enactment of "spot" zoning ordinances or amendments to comprehensive zoning ordinances under the police power which results in a total destruction or substantial diminution of value of property affected thereby without just compensation therefor constitutes the taking of property without due process. Olsen v. City of Minneapolis, 263 Minn. 1, 115 N. W. (2d) 734; Pearce v. Village of Edina, 263 Minn. 553, 118 N. W. (2d) 659. See, also, Golden v. City of St. Louis Park, 266 Minn. 46, 122 N. W. (2d) 570; Connor v. Township of Chanhassen, 249 Minn. 205, 81 N. W. (2d) 789. Where the motivating basis for such enactments is in furtherance of the esthetic concepts of nearby property owners who are not called upon to make compensation to the owner for any resulting loss or diminution in the value of his property, this would be particularly true. Numerous courts have given approval to the doctrine that where zones have been established in a municipality, and property has been purchased with intent to use it in conformance with such zoning, the purchaser ordinarily has a right to so use it. Vine v. Zabriskie, 122 N. J. L. 4, 3 A. (2d) 886; City of Coldwater v. Williams Oil Co. 288 Mich. 140, 284 N. W. 675; Metropolitan Life Ins. Co. v. City of Chicago, 402 Ill. 581, 84 N. E. (2d) 825; Western Theological Seminary v. City of Evanston, 325 Ill. 511, 156 N. E. 778; Zoning Comm. v. New Canaan Bldg. Co. 146 Conn. 170, 148 A. (2d) 330; State ex rel. Schroedel v. Pagels, 257 Wis. 376, 43 N. W. (2d) 349; Tremarco Corp. v. Garzio, 32 N. J. 448, 161 A. (2d) 241; Gem Properties, Inc. v. Board of Appeals of Milton, 341 Mass. 99, 167 N. E. (2d) 315.

The language of the United States Supreme Court in Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 415, 43 S. Ct. 158, 160, 67 L. ed.

322, 326, has reference to the exercise of the police power and constitutional restrictions against taking private property without due compensation. There Mr. Justice Holmes stated:

"* * * The protection of private property in the Fifth Amendment * * * provides that it shall not be taken for such [public] use without compensation. A similar assumption is made in the decisions upon the Fourteenth Amendment. [Citing cases.] When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States.

"The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. * * * In general it is not plain that a man's misfortunes or necessities will justify his shifting the damages to his neighbor's shoulders. [Citing cases.] We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."

Affirmed.