JOSEPH S. HOLASEK AND OTHERS v. VILLAGE OF MEDINA AND OTHERS.

226 N. W. 2d 900.

March 7, 1975—No. 44839.

*Schieffer, Hadley, Bakke & Jensen* and *Richard J. Schieffer,* for appellants.

*O'Connor & Hannan, Thomas A. Keller III,* and *James R. Dorsey,* for respondents.

Heard before Otis, Rogosheske, and Scott, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

In a declaratory judgment action, the trial court concluded that the defendant village council's denial of plaintiffs' application for a special-use permit for the construction of a mobile home park was arbitrary, capricious, and unreasonable, and ordered defendant village of Medina to issue the special-use permit. Defendants appeal from the order denying their blended post-trial motion. Since the evidence amply sustains the trial court's findings and conclusion of arbitrary denial, and the zoning ordinance authorizes the use of plaintiffs' land for a mobile home park, we affirm.

Plaintiffs Joseph S. and Harriet V. Holasek are the owners of a tract of farmland in the village of Medina. The tract consists of approximately 113 acres and has been farmed by the Holaseks for over 20 years. Because the declining income from the farm was insufficient to support their family, the Holaseks entered into an agreement with one Charles Nolan, under which the Holaseks agreed to sell the farm to Nolan or his assigns if a special-use permit to build a mobile home park on the northern portion of the farm could be obtained. Nolan subsequently assigned his rights to plaintiff Land and Resources Development Company. The portion of the farm on which the mobile home park was proposed to be built comprises 4.7 acres and under Medina's zoning ordinance is designated C-1, a land-use classification which permits a variety of residential and commercial uses but does not expressly authorize the establishment of a

mobile home park. Nearly all of the rest of the farm, which adjoins the part sought to be developed as a mobile home park, lies within an area zoned R-A, in which mobile home parks are permitted by special-use permit. In addition to its zoning ordinance, Medina in 1970 enacted a mobile home park ordinance imposing a comprehensive variety of restrictions and regulations pertaining to the establishment, construction, and maintenance of mobile home parks.

On July 2, 1971, plaintiffs jointly applied for permission to construct a mobile home park pursuant to both the zoning ordinance and the mobile home park ordinance. The application was considered by the village council of Medina at its meeting on July 6, 1971, and was denied by unanimous vote after approximately 20 minutes' deliberation. No reasons for the denial were stated by any member of the council and none is reflected in the minutes of the meeting. Shortly after the denial, the declaratory judgment action leading to this appeal was commenced. In the process of preparation for trial, depositions of the council members were taken. In these depositions it was revealed for the first time by various council members that the application was denied because the plans submitted in support of plaintiffs' application were not in conformance with certain specifications of the mobile home park ordinance. Plaintiffs thereupon submitted an amended application in an attempt to meet the councilmen's objections. The amended application was summarily denied on December 7, 1971, the reason given being that this litigation was pending.

The trial judge concluded, on the basis of detailed and comprehensive findings of fact, that the council acted arbitrarily, capriciously, and unreasonably in denying plaintiffs' application and ordered the village to issue a special-use permit. On this appeal, defendants challenge the findings and the conclusion of arbitrariness and, as in their post-trial motion, raise the issue of whether certain provisions of the village's zoning ordinance were properly interpreted by the trial judge. These two issues are now before us on appeal.

Defendants' argument that the evidence is insufficient to support the trial court's explicit finding of arbitrary denial has little merit. The court, in a most helpful memorandum detailing the testimony and explaining the basis for the findings, stated:

"* * * Plaintiffs' testimony presented a comprehensive coverage of all legitimate concerns of the Village and from all of the evidence, the Court could find no sufficient basis to justify the action of the Village Council in resolving to deny plaintiffs' application for the special use permit."

It is well established that where a zoning ordinance expressly authorizes a proposed use by special permit in the discretion of the governing body of a municipality a denial of the permit must be for reasons related to public health, safety, and general welfare. Zylka v. City of Crystal, 283 Minn. 192, 167 N. W. 2d 45 (1969); Hay v. Township of Grow, 296 Minn. 1, 206 N. W. 2d 19 (1973). Similarly, it is now a settled rule of judicial review that the failure of the governing body to record contemporaneously the facts and legally sufficient reasons for its determination constitutes a prima facie showing of arbitrariness. Inland Const. Co. v. City of Bloomington, 292 Minn. 374, 195 N. W. 2d 558 (1972); Metro 500, Inc. v. City of Brooklyn Park, 297 Minn. 294, 211 N. W. 2d 358 (1973). As we said in Zylka (283 Minn. 198, 167 N. W. 2d 50):

"* * * Surely, where nothing more appears than that the council denied the application after a hearing before and upon recommendation of its planning commission, there is no sufficient evidentiary basis for a court to infer that the council's action was reached upon a consideration of the facts and was based upon reason rather than the mere individual whim of the council members. While plaintiff, indeed, has the burden to show arbitrariness, the failure of the council to record any legally sufficient basis for its determination at the time it acted made a prima facie showing of arbitrariness inevitable."

An examination of the record reveals an abundance of evidence

to support the factual findings of the trial court. Not only did plaintiffs' application and proposal fully comply with the detailed requirements of both ordinances, but the absence of any record of the facts or legally sufficient reasons for both denials at the time the council acted, coupled with the testimony of the council members at trial, makes the court's finding and conclusion of arbitrary and capricious action inevitable. Although defendants' argument on appeal suggests that reasons related to community health, safety, and welfare may have existed to justify the council's action, upon this record such reasons are wholly unconnected with the actual basis for the council's denial. We are constrained to view the council's action as a classic case of an arbitrary and capricious denial.

Defendants accurately state that the area of the farm on which the park is proposed lies entirely within the C-1 area, in which mobile homes are neither an express or discretionary permitted use. Hence, defendants, with appealing persuasiveness, argue that plaintiffs' application must be legally regarded as a request for a variance rather than a special-use permit. It is true that, where a municipal zoning ordinance does not permit a particular use, one who desires such a use must seek a variance rather than a special-use permit. A variance allows a property owner to use his property in a manner forbidden by an ordinance, while a special-use permit allows him to put his property to a use which the ordinance expressly permits. The allowance of a variance is compelled only where there has been an unlawful taking of property in a constitutional sense, demonstrated by the landowner's inability to put his land to any beneficial use unless the variance is granted. Sun Oil Co. v. Village of New Hope, 300 Minn. 326, 220 N. W. 2d 256 (1974); Zylka v. City of Crystal, *supra*; Westling v. City of St. Louis Park, 284 Minn. 351, 170 N. W. 2d 218 (1969). Here, if a variance were required, requested, and denied, there could be no unlawful taking in the light of the many commercial and noncommercial uses permitted in the C-1 area under Medina's zoning ordinance. Thus, if de-

fendants are correct, a reversal of the trial court's decision is required.

The weakness of defendants' argument is twofold. First, it represents a shift from their position at the pleading and the trial stage of these proceedings. The answer to plaintiffs' complaint quite clearly admits that a mobile home park in the area proposed is a use authorized by the issuance of a special-use permit. As expected upon such concession, the trial court so expressly found, and it was only at post-trial proceedings and on this appeal that defendants changed their position. Second, we believe that a proper interpretation of the extension-of-use provision of the zoning ordinance supports defendants' initial concession and the trial court's determination.

Medina Zoning Ordinance, § 16, provides in pertinent part:

"The following additional uses as well as those previously designated as permitted in certain districts with special use permits may be permitted in the designated district but only after securing such a special use permit, following approval of the issuance of such permit by the Board of Appeals and the Village Council, and subject to any conditions imposed by such use permit as provided in Section 29 hereof.

\* \* \* \* \*

"(j) The extension of a use into a district where it would otherwise be prohibited, in a case where a district boundary line is so located that a lot is in more than one district."

Defendants contend that the provision should not apply because the farm is not a "LOT" within the terms of the ordinance. Section 3(cc) defines a "LOT" as:

"An entire parcel or tract of land occupied or to be occupied by a main building and its accessory buildings, or by a group such as a dwelling group or automobile court and their accessory buildings, including the yards and open spaces required therefor by this code and applicable law."

The focal language of the definition emphasizes the use to which the property is put rather than its size or other considerations, as both parties agree. This emphasis is consistent with the obvious purpose of the extension-of-use provision, which is to permit a particular lot which is transected by a boundary line between two zoning districts to be used in accordance with the provisions of the less restrictive zone by special-use permit, and thus to prevent any possible harsh results when a lot is so transected. See, 8 McQuillin, Municipal Corporations (3 ed.) § 25.174; Donohue v. Zoning Board of Appeals, 155 Conn. 550, 235 A. 2d 643 (1967). Here, plaintiffs' property has been devoted entirely to farming. The farm is transected by the boundary between a district zoned C-1 and a district zoned R-A. The bulk of the farm lies within the R-A district, where trailer parks are expressly allowed as a special use. We consider that the farm constitutes a lot within the zoning ordinance and that the extension-of-use provision is applicable to these facts, with the effect that the uses permitted on the R-A portion of the farm are extended by special-use permit to the C-1 portion of the farm. We therefore conclude that a mobile home park is permitted by special-use permit to be established on that part of the farm which lies within the C-1 district.

Affirmed.