STATE of Minnesota, By the ROCHES-
TER ASSOCIATION OF NEIGHBOR-
HOODS, et al., Appellants,

v.

CITY OF ROCHESTER, Respondent,

Rodney Younge, Respondent,

Northwestern National Bank of Minneap-
olis and Mr. Judson Gooding, as trustees
of the trust established under the will of
A. C. Gooding, Respondents.

No. 48166.

Supreme Court of Minnesota.

May 5, 1978.

Dayton, Herman & Graham and Philip W. Getts, Minneapolis, for appellants.

Gerald H. Swanson, City Atty., Rochester, for City of Rochester.

Patterson & Restovich, Rochester, for Rodney Younge.

Schacht & Kerr, Rochester, for Northwestern Nat. Bank of Minneapolis.

Heard before ROGOSHESKE, PETERSON and TODD, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

The Rochester Association of Neighborhoods and individual plaintiffs appeal from an order of the trial court denying declaratory judgment and injunctive relief in their action challenging the validity of a zoning ordinance amendment enacted by the Rochester City Council which rezoned a 1.18-acre tract of land from single-family residential use (R-1) and low-density residential use (R-2) to high-density residential use (R-4) to permit the building of a 6-story, 49-unit, condominium apartment building on the land. Plaintiffs contend (1) that this rezoning of a single tract was presumptively invalid as a "quasi-judicial act" by the council not supported with written findings of fact upon substantial evidence; (2) that even if it was a legislative act, the rezoning was arbitrary and capricious because it was inconsistent with the city's land-use plan and without reasonable relation to the health, safety, and welfare of the community; and (3) that the ordinance was invalid "spot zoning." We affirm the decision of the trial court and hold that the promulgation of the Rochester ordinance was a valid exercise of the municipality's delegated legislative power and, upon the record presented, was neither proven to be without reasonable relation to the public health, safety, and welfare, nor to be invalid as "spot zoning."

The 1.18-acre tract rezoned is owned by the A. C. Gooding Trust and is situated three blocks away from the central business district in the city of Rochester. Before the rezoning challenged in this suit, the eastern two-thirds of the subject property was zoned R-2 and the western one-third was zoned R-1. The land is bounded on the west and southwest by an R-1 district of single-family houses known as the Edison Park Neighborhood. On the south is an R-2 district of low-density, multiple-family dwellings. Across the street to the east is an R-4 district with a 24-unit apartment building. Across the street to the north is an R-4 district with a 35-unit condominium. Diagonally across the street to the northeast is a vacant lot zoned "institutional" and owned by the Mayo Clinic. Visible from the rezoned tract are Mayo Clinic Complex buildings located one block north and one block east and another high-rise condominium two blocks away.

Trustees of the A. C. Gooding Trust entered into a purchase agreement to convey the 1.18-acre tract to defendant Rodney Younge contingent upon the rezoning of the property to R-4 by September 1, 1977. On December 23, 1976, the trustees and defendant Younge applied to have the property rezoned to R-4. Younge submitted a "project description" proposing to develop a 60-unit, luxury condominium, later amended to propose a 49-unit condominium building, on the site. The application was referred to the Rochester Planning and Zoning Commission, which held a public hearing on January 12, 1977. The Rochester Consolidated Planning Department recommended to the planning commission that the rezoning be tabled to permit a study to determine whether the city's land-use plan should be amended. The planning commission recommended to the city council that the rezoning application be denied as inconsistent with the city's land-use plan, which called for low-density residential use on the Gooding property. On February 7, 1977, the council rejected the planning commission's recommendation and on March 7, 1977, passed an ordinance rezoning the subject property to R-4. The council gave no written reasons or findings supporting the rezoning. Minutes of the council meetings on February 7 and February 23, 1977, however, show that the council members believed the proposed condominium was needed to serve the city's expanded housing requirements. Council members stated that the Gooding property would be an ideal site since it was located within three blocks of the central business district and since high-density residential uses already

across two streets from the property would be compatible with the proposed condominium and made development of the subject property for any other use unlikely. On July 5, 1977, the council amended its land-use plan to conform to the rezoning.

Plaintiffs, individual owners of residences abutting the subject property and their incorporated Association of Neighborhoods, appeared at the January 12, 1977, public hearing and were heard in protest at a February 23, 1977, meeting of the council. On April 8, 1977, plaintiffs filed this suit challenging the validity of the March 7, 1977, rezoning ordinance and seeking declaratory judgment and injunction. The trial court denied the requested relief.

■ 1. On appeal, plaintiffs argue that the council's action in rezoning a single 1.18-acre tract should be subject to close judicial scrutiny as an administrative or quasi-judicial act. This standard of review would place upon the municipality the burden of supporting the ordinance as a valid exercise of the police power by findings of fact based upon substantial evidence. Absent such findings, the ordinance would be presumed invalid. Plaintiffs rely upon *Fasano v. Board of County Commrs. of Washington County,* 264 Or. 574, 507 P.2d 23 (1973), and *Fleming v. City of Tacoma,* 81 Wash.2d 292, 502 P.2d 327 (1972), in which the Oregon and Washington courts characterized the rezoning of a single tract of land as a quasi-judicial act affecting the rights of a few individuals more than the public generally. Those courts placed the burden of justifying the zoning change as reasonable upon the proponents, including the adopting city council.

We decline to follow the rule applied in those jurisdictions, for we have consistently held that "when a municipality adopts or amends a zoning ordinance, it acts in a legislative capacity under its delegated police powers." *Beck v. City of St. Paul,* 304 Minn. 438, 448, 231 N.W.2d 919, 925 (1975). See, also, *Sun Oil Co. v. Village of New Hope,* 300 Minn. 326, 333, 220 N.W.2d 256, 261 (1974); *Alexander v. City of Minneapolis,* 267 Minn. 155, 125 N.W.2d 583 (1963).

As a legislative act, a zoning or rezoning classification must be upheld unless opponents prove that the classification is unsupported by any rational basis related to promoting the public health, safety, morals, or general welfare, or that the classification amounts to a taking without compensation. This rule applies regardless of the size of the tract of land involved. See, e. g., *Sun Oil Co. v. Village of New Hope, supra* (1 acre); *Beck v. City of St. Paul, supra* (33½ acres). Our narrow scope of review reflects a policy decision that a legislative body can best determine which zoning classifications best serve the public welfare. In *Beck v. City of St. Paul,* 304 Minn. 438, 448, 231 N.W.2d 919, 925, and *Sun Oil Co. v. Village of New Hope,* 300 Minn. 326, 334, 220 N.W.2d 256, 261, we said:

"Even where the reasonableness of a zoning ordinance is debatable, or where there are conflicting opinions as to the desirability of the restrictions it imposes * * *, it is not the function of the courts to interfere with the legislative discretion on such issues."

■ Plaintiffs note that we have not accorded the same presumption of validity to city council action denying special-use permits as we have to adoption or amendment of zoning ordinances. In *Zylka v. City of Crystal,* 283 Minn. 192, 167 N.W.2d 45 (1969), we adopted the rule that where a special use which conforms with the zoning ordinance is requested, a city council's denial of a special-use permit to a single landowner is proved prima facie arbitrary and unreasonable if it is shown that the council failed to support its action by written findings of substantial evidence showing the use impermissible under the permit standards of the ordinance. See, also, *Holasek v. Village of Medina,* 303 Minn. 240, 226 N.W.2d 900 (1975); *Metro 500, Inc. v. City of Brooklyn Park,* 297 Minn. 294, 211 N.W.2d 358 (1973); *Inland Construction Co. v. City of Bloomington,* 292 Minn. 374, 195 N.W.2d 558 (1972). Plaintiffs ask that zoning amendments be reviewed under a like standard and suggest that the only distinction between special-use permits and the

rezoning in this case is the label "rezoning" chosen by the council to describe its action. We do not agree. While an amendment of the zoning ordinance can permit particular property to be used in a manner formerly forbidden by the ordinance, "a special use provision permits property, within the discretion of the governing body, to be used in a manner expressly authorized by the ordinance." *Zylka v. City of Crystal,* 283 Minn. 192, 195, 167 N.W.2d 45, 49. In passing a zoning or rezoning ordinance, a city council is required to make a legislative judgment that a certain zoning classification will promote the "public health, safety, morals and general welfare." Minn. St. 462.357, subd. 1. In granting or denying a special-use permit, a city council is not altering the legislative judgment as to the zoning classification. Rather, it has the function, adjudicative in nature, of applying specific use standards set by the zoning ordinance to a particular individual use and must be held strictly to those standards.

■ The proposed high-density use of the subject land was not in conformity with existing zoning classifications and therefore could not have been accomplished through a special-use permit.[1] The use could be permitted only through amendment of the zoning ordinance. This was not a case where the council was enabled to obtain a lesser standard of judicial scrutiny than would otherwise be applied simply by choosing to label its action "rezoning." An amendment of the zoning ordinance was required and one was passed. No other label could have applied to the council's action. The council's amendment of the ordinance, under our previous holdings, involved a legislative judgment and as such must be reviewed under the narrow scope of judicial review stated.

2. Assuming, as we hold, that the rezoning was a legislative act, plaintiffs ask us to invalidate the ordinance as arbitrary and capricious and without reasonable relation to promoting public health, safety, morals, and general welfare. They emphasize that the ordinance, when adopted against the planning commission's recommendation, was inconsistent with Rochester's land-use plan, which was thereafter amended to conform to the zoning change. Plaintiffs ask that the rezoning be invalidated on this basis.

Other states have required that a city's zoning ordinances conform exactly to its land-use plan when adopted or have held that the presumption of validity accompanying a legislative act is lifted when a rezoning ordinance is adopted despite city planners' recommendations that it will not be consistent with the comprehensive land-use plan at the time. See, *Baker v. City of Milwaukie,* 271 Or. 500, 533 P.2d 772 (1975); *Udell v. Haas,* 21 N.Y.2d 463, 288 N.Y.S.2d 888, 235 N.E.2d 897 (1968); 1 Anderson, American Law of Zoning (2 ed.) § 3.15. We find no such requirement nor any such shifting presumption in our law.

■ Minn. St. 462.351 to 462.364, Minnesota's municipal planning act, provides for the adoption of a comprehensive land-use plan to guide future developments in a municipality, and § 462.357 grants the municipality power to effectuate its land-use plan through zoning. Section 462.357, subd. 2, provides:

"At any time after the adoption of a land use plan for the municipality, the planning agency, for the purpose of carrying out the policies and goals of the land use plan, may prepare a proposed zoning ordinance and submit it to the governing body with its recommendations for adoption. Subject to the requirements of subdivisions 3, 4 and 5, the governing body may adopt and amend a zoning ordinance by a two-thirds vote of all its members."

Plaintiffs interpret this provision as requiring that the city's land-use plan be amended before a zoning ordinance is amended. We

---

1. The proposed nonconforming use also could not have been permitted through a variance. Under Minn. St. 462.357, subd. 6, a variance may not be granted to permit any use that is not permitted under the zoning ordinance. Variances are available only with respect to other requirements of the ordinance, such as setback requirements and similar provisions.

read the statute to require only that a land-use plan be adopted before the initial zoning ordinance is adopted. The statute in fact does not require even that the zoning ordinance conform exactly to the city's land-use plan. While it may seem desirable as a matter of municipal planning to amend the land-use plan before adopting an inconsistent zoning ordinance, such a requirement is properly a matter for the legislature, not for this court, to consider. This court has frequently noted consistency between a city's land-use plan or planning commission's recommendation and the zoning ordinance as a factor supporting the reasonableness of the city's legislative judgment in passing the zoning ordinance. See, e. g., *Olsen v. City of Hopkins,* 276 Minn. 163, 149 N.W.2d 394 (1967); *Beck v. City of St. Paul,* 304 Minn. 438, 231 N.W.2d 919; *Sun Oil Co. v. Village of New Hope,* 300 Minn. 326, 220 N.W.2d 256. But we have never held, nor could we hold under the language of § 462.357, that a procedure such as Rochester's of amending the land-use plan after amending the zoning classification could conclusively invalidate the zoning ordinance. The city strictly followed the procedures of § 462.357, subds. 3 and 4, requiring that a proposed amendment to the zoning ordinance first be submitted to the planning agency for a recommendation and that a public hearing be held. There is nothing in § 462.357 which makes the recommendation of the planning commission binding upon the city council or governing body. Plaintiffs appeared and were heard at a public hearing on January 12, 1977, before adoption of the ordinance, and their attorney was heard in protest proceedings before the February 23, 1977, council meeting after the council had rejected the planning commission's recommendations on February 7, 1977.

■ Upon the record presented, we hold that the council's legislative decision to rezone the 1.18-acre Gooding property to R-4 high-density was not arbitrary and capricious and was not shown to be without reasonable relation to promotion of the public health, safety, morals, and general welfare. There was evidence of the need for more high-density housing in the city of Rochester. Locating the proposed condominium on the subject property complied with the standards for location of R-4 uses set by the Rochester Code of Ordinances, § 66.206, which provides:

"R-4 HIGH DENSITY DISTRICT: This district is intended to create, preserve, and enhance areas for multi-family use at high densities for both permanent and transient families. It is typically appropriate only in areas of good accessibility to thoroughfares, to public transportation, public community centers, libraries, and major shopping centers and shall be limited to the general area of the central business district."

The evidence established that the Gooding land is within two blocks of two primary thoroughfares; is within two blocks of city bus lines; is near public community centers, a child care center, and a city library; and is within three blocks of the central business district and major shopping area. There was a rational basis for concluding that a six-story condominium would be compatible with existing uses in the neighborhood of the subject property. The property was already surrounded on two sides by high-density R-4 and institutional uses and on one side by R-2 duplexes and smaller apartment buildings; it was bounded only to the west and southwest by plaintiffs' single-family residences. Already across two streets from the property were 24-unit and 35-unit high-rises, and another high-rise and Mayo Clinic buildings were within two blocks and visible from the property. Within these surroundings, it was reasonable for council members to conclude that development of this property for further low-density or single-family use would have been economically unlikely. Further, there was evidence, and the trial court found, that R-4 zoning of the Gooding land would increase tax revenues for the city; would create no traffic problem for the area; and (as stipulated by the parties) could be accommodated by presently adequate fire, police, sewer, water, and electrical services. Based upon all of these facts and circum-

stances, we cannot find that the rezoning was without rational basis.

Plaintiffs point to other factors such as the apparent stability of the Edison Park single-family neighborhood; the expressed concerns of neighbors that increased noise, traffic, people, and less open space would interfere with the character of that neighborhood; the fact that the Gooding land is also suited for lesser-density R-2 use under the definitions of the Rochester zoning code;[2] and the possibility that high-density use of the Gooding land would decrease values of adjacent property for single-family use. All of these factors may make the reasonableness of the zoning change fairly debatable, but under our standard of review, that is not enough to justify the court's interfering with the council's legislative judgment in passing the ordinance. In particular, plaintiffs' generalized claims that their property may decline in value, absent some evidence of an actual decline sufficient to prove a taking of property without compensation, do not form a basis for invalidating a zoning ordinance or amendment.[3]

3. Finally, plaintiffs urge the court to invalidate the rezoning ordinance as "spot zoning." "Spot zoning" is a label applied to certain zoning amendments invalidated as legislative acts unsupported by any rational basis related to promoting public welfare. 1 Anderson, American Law of Zoning (2 ed.) § 5.08. The term applies to zoning changes, typically limited to small plots of land, which establish a use classification inconsistent with surrounding uses and create an island of nonconforming use within a larger zoned district, and which dramatically reduce the value for uses specified in the zoning ordinance of either the rezoned plot or abutting property. See, *Alexander v. City of Minneapolis*, 267 Minn. 155, 125 N.W.2d 583 (1963); *Magnin v. Zoning Comm. of Town of Madison*, 145 Conn. 26, 138 A.2d 522 (1958); *Langer v. Planning & Zoning Comm.*, 163 Conn. 453, 313 A.2d 44 (1972); *Hein v. Daly City*, 165 Cal. App.2d 401, 332 P.2d 120 (1958); *Hermann v. City of Des Moines*, 250 Iowa 1281, 97 N.W.2d 893 (1959). See, generally, Annotation, 51 A.L.R.2d 263; 1 Anderson, American Law of Zoning (2 ed.) §§ 5.09, 5.12, 5.17; 1 Rathkopf, The Law of Zoning and Planning, c. 26.

In *Hermann v. City of Des Moines, supra,* principally relied upon by plaintiffs, the city of Des Moines rezoned a single city lot located in the middle of an R-2 district to R-3. After rezoning, the spot-zoned lot was surrounded by lots of different classification. In *Alexander v. City of Minneapolis, supra,* we characterized spot-zoning amendments as those which "result in total destruction or substantial diminution of value of property affected thereby." 267 Minn. 155, 160, 125 N.W.2d 583, 586.

The burden of demonstrating that a particular zoning amendment is spot zoning rests with the litigant attacking the ordinance, and the usual presumption of validity attaching to zoning amendments as legislative acts applies. See, *Raffia v. Zoning Board of Appeals of Town of Enfield,* 151 Conn. 484, 199 A.2d 333 (1964); *Crall v. Leominster,* 362 Mass. 95, 284 N.E.2d 610 (1972); 1 Anderson, American Law of Zoning (2 ed.) § 5.08, p. 290.

Here, plaintiffs have proved no substantial diminution in their property value due to the rezoning, nor have they shown that the rezoning would create an

**2.** Rochester Code of Ordinances, § 66.204, provides: "R-2 LOW DENSITY DISTRICT: This district is intended 1) to create low density areas of mixed residential use and 2) *to preserve and enhance residential areas undergoing conversion of single-family dwellings to multi-family uses.*" (Italics supplied.)

**3.** In *Beck v. City of St. Paul,* 304 Minn. 438, 449, 231 N.W.2d 919, 925 (1975), this court said: " * * . * The simple fact that certain property values may decline is not of itself a sufficient reason to invalidate a proposed rezoning. Values are not, in and of themselves, the test of validity of a zoning regulation. They are factors for a city council to take into consideration in arriving at its conclusions on the total merits in the interest of the community. The general welfare of the public is paramount in importance to the pecuniary stake of the individual."

island of nonconforming use as the court found in *Hermann*. The property to the east and north of the subject tract was already zoned high-density residential. The record presented shows sufficient justification for this rezoning as a proper exercise of legislative power for the public welfare, and we find no basis for invalidation of the ordinance under the "spot zoning" label.

Affirmed.

KELLY, Justice (dissenting).

I respectfully dissent. I would have this court in this case adopt the standard of review placing upon the municipality the burden of supporting the ordinance as a valid exercise of the police power by findings of fact based upon substantial evidence. I am persuaded by the rationale of *Fasano v. Board of County Commrs. of Washington County*, 264 Or. 574, 507 P.2d 23 (1973), and *Fleming v. City of Tacoma*, 81 Wash.2d 292, 502 P.2d 327 (1972), cited in the majority opinion. I would overrule our cases to the contrary.

Furthermore, I think it is illogical to require municipalities to live up to a stricter standard of review in granting or denying a special-use permit than in rezoning a parcel of land. I am not persuaded that characterizing one as legislative and the other as adjudicative in nature is an acceptable answer. Those landowners who buy or improve their lands in reliance on zoning undoubtedly place greater reliance on the zoning of lots as residential than they would on the prospects of getting a special-use permit.

Thus the standard of review should be a higher one for rezoning or at least the same as for securing a special-use permit.

OTIS, J., took no part in the consideration or decision of this case.