## S01A0117. CITY OF ROSWELL et al. v. OUTDOOR SYSTEMS, INC.
### (549 SE2d 90)

FLETCHER, Chief Justice.

The City of Roswell enacted a temporary moratorium on applications for billboard signs after its sign ordinance was struck down as unconstitutional. During the month that the moratorium was in effect, Outdoor Systems filed four applications to construct billboard signs within the city. When the city failed to approve the applications, the billboard company filed a petition for mandamus, which the trial court granted. We granted the city's discretionary application to consider the trial court's ruling that the moratorium was void because the city failed to comply with the notice provisions of OCGA § 36-66-4 (a) of the Zoning Procedures Law. Because the city's temporary moratorium was not a "final legislative action," it was not a "zoning decision" as defined in the Zoning Procedures Law and the city did not have to comply with the statute's notice and hearing requirements. Therefore, we reverse.

The trial court in a different case involving another outdoor advertising company struck down the City of Roswell's sign ordinance as unconstitutional in November 1999.[1] In response, the Roswell city council passed a resolution that imposed a moratorium on the acceptance of applications for signs exceeding 128 square feet in size or 12 feet in height. The purpose of the moratorium was to give the city time to draft and enact new sign regulations. The resolution provided that the moratorium would expire on January 1, 2000, or the date that the city council repealed the prohibition, whichever occurred first. After the moratorium went into effect, Outdoor Systems filed building permit applications seeking to construct outdoor advertising signs at four locations in the city. When the city did not grant the requested permits, the company sought mandamus, claiming a vested right in the issuance of the sign permits.

1. The Zoning Procedures Law defines a "zoning decision" as a "final legislative action by a local government" that results in the adoption of a zoning ordinance, grant of a special use permit, or amendment to a zoning ordinance that changes the ordinance's text, rezones property, or zones annexed property.[2] Construing the statutory definition in this case, we hold that the city's temporary morato-

---

[1] See *SMD v. City of Roswell*, Civil Action Number E-65358 (Fulton County Superior Court Nov. 18, 1999).

[2] OCGA § 36-66-3 (4) (A) - (E); see *Atlanta Bio-Med v. DeKalb County*, 261 Ga. 594, 596 (408 SE2d 100) (1991) (county's rescission of an amendment to a county zoning ordinance is a "zoning decision"); *Northridge Community Ass'n v. Habersham At Northridge*, 257 Ga. 722, 723 (363 SE2d 251) (1988) (consent order between county and developer entered in a court case about a specific piece of property is not a "zoning decision").

rium on billboard sign applications is not a "final legislative action." The city imposed a brief ban on sign applications lasting approximately one month. It did not permanently suspend all applications or prohibit them for a long time.[3] Moreover, it enacted the moratorium as an emergency measure to preserve the status quo for 30 days pending its enactment of a new ordinance.[4] Because the moratorium was temporary, limited in scope to billboards exceeding a specific size, and enacted in response to a court order invalidating existing sign regulations, we conclude that it was a reasonable interim action and therefore exempt from the procedural requirements of OCGA § 36-66-4.[5]

2. The legislative intent in passing the Zoning Procedures Law supports excluding temporary, reasonable moratoria from the statute's notice and hearing requirements. OCGA § 36-66-4 mandates hearings whenever a local government proposes taking action that will result in a zoning decision. The purpose of the law is to afford due process to the public when local governments regulate the use of property through the exercise of their zoning power.[6] We have previously rejected the argument that the notice and hearing requirements apply to every step in the process from an application to a zoning ordinance, concluding that the statute requires "one hearing during the continuous course of a zoning matter before the local government."[7] Requiring a public hearing on a city's decision to suspend permit applications for one month, an intermediate step in the legislative process, would not give affected persons a meaningful opportunity to be heard on any new substantive proposals. Rather, the purpose of the law would be better met by giving affected persons the opportunity to comment on the proposed regulations, as occurred here when the city council held a public hearing on December 20 on proposed amendments to its zoning ordinance related to sign regulations.

In conclusion, neither the statutory language nor purpose behind the Zoning Procedures Law requires a local government to

---

[3] See, e.g., *Alexander v. City of Minneapolis*, 125 N.W.2d 583 (Minn. 1963) (ruling void "hold order" on issuing building permit that had been in effect for nine years).

[4] Cf. *Davidson Mineral Properties v. Monroe County*, 257 Ga. 215, 216 (357 SE2d 95) (1987) (county resolution enacting a moratorium on commercial development "is not a temporary measure to maintain the status quo" but establishes a system requiring the permission of the board of commissioners).

[5] See generally I Edward H. Zeigler, Jr., *Rathkopf's The Law of Zoning and Planning* § 11.04 (2001) (listing cases exempting interim zoning and building moratoria from the procedural requirements applying to ordinary zoning ordinances and also cases holding interim zoning and stop-gap ordinances invalid as a result of procedural defects).

[6] See OCGA § 36-66-2 (a).

[7] See *City of Cumming v. Realty Development Corp.*, 268 Ga. 461, 464 (491 SE2d 60) (1997).

hold a hearing on a temporary moratorium that is reasonable. Because the City of Roswell did not have to comply with the requirements of OCGA § 36-66-4 in briefly suspending its acceptance of applications for large billboard signs, the city's moratorium is valid.

*Judgment reversed. All the Justices concur, except Benham, J., who concurs specially and Carley, J., who dissents.*

BENHAM, Justice, concurring specially.

While I concur with the result reached by the majority opinion, I cannot agree with the reasoning by which that result was reached. The majority opinion purports to construe the statutory definition of "zoning decision" and concludes that the ordinance in question was not a "final legislative action." However, there is no meaningful construction of the statute in the majority opinion. Instead, it recites several factors having no relation to the question of whether the moratorium was a "final legislative action," and then invents a new category of legislation, "reasonable interim action," which is "exempt" from the procedural requirements of the Zoning Procedures Law (ZPL). The ZPL contains no such exemption. The moratorium is either a zoning ordinance and is subject to the requirements of the ZPL, or it is not a zoning ordinance. Rather than develop new common law exceptions to the statute controlling zoning legislation, this Court should take a close look at the moratorium and at the subject of land use regulation and recognize that the moratorium at question is simply not zoning legislation and is not controlled by the ZPL for that reason.

The notice provisions of the ZPL are found in OCGA § 36-66-4 (a) and, by the terms of that section, come into play when a local government takes action resulting in a zoning decision. " 'Zoning decision' means final legislative action by a local government which results in: (A) The adoption of a zoning ordinance; . . ." OCGA § 36-66-3 (4). Therefore, if the moratorium at issue in this case is a zoning ordinance, the passage of the moratorium was a zoning decision and the notice provisions of the ZPL did apply; conversely, if the moratorium at issue in this case is not a zoning ordinance, then the passage of the moratorium was not a zoning decision and the notice provisions of the ZPL did not apply.

" 'Zoning ordinance' means an ordinance or resolution of a local government *establishing procedures and zones or districts* within its respective territorial boundaries which *regulate the uses and development standards of property within such zones or districts. . . .*" (Emphasis supplied.) OCGA § 36-66-3 (5). The statutory definition having established as a requirement for zoning ordinances that they regulate uses and development of property by means of zones or districts, it follows that an ordinance or resolution which does not estab-

lish zones or districts or regulate land use with regard to those zones or districts is not a zoning ordinance. The resolution in question in the present case, a moratorium on the issuance of permits for a particular type of sign, does not distinguish between zones or districts within the City but applies to the territory of the City as a whole. Since the moratorium resolution does not regulate signs with regard to zones or districts, it is not a zoning ordinance within the meaning of the ZPL and the notice provisions of the ZPL were, therefore, inapplicable to its enactment.

The trial court's contrary conclusion was based in part on its belief, expressed in its order, that all regulation of land use is zoning and, therefore, subject to the requirements of the ZPL. The trial court, like the dissent, takes too broad a view of zoning. In Pindar's Georgia Real Estate Law, 5th ed. 1998, legislative forms of land use regulation are recognized as including building codes, sanitary ordinances, and zoning laws. Id. at § 3-2. Rather than including every form of land use regulation, zoning is only one method of achieving the goals of such regulation. "The very essence of zoning is the territorial division of land into use districts according to the character of the land and buildings, the suitability of land and buildings for particular uses, and uniformity of use." 83 AmJur2d, § 2. Georgia statutory authority on zoning is in complete accord with that principle. As is clear from the ZPL, zoning is a type of land use regulation which involves dividing a governmental unit into zones or districts and applying different standards to such zones or districts. See OCGA § 36-66-3 (3). Since the moratorium at issue here did not create or distinguish between different zones or districts within the City, but applied uniformly to the whole City, it was not a zoning enactment.

The dissent's suggestion that the ZPL's definition of zoning is so inclusive as to include all land use regulation disregards the four references in that definition to zones and districts. Far from including all land use regulation, the definition plainly excludes from the concept of zoning any land use regulation which is not based on zones or districts. Also illogical is the suggestion in the dissent that the ZPL is the only possible source of due process in the field of land use regulation. Every legislative action must conform to certain standards, and every enactment is subject to attack in the courts on the basis of unconstitutionality. The section of the ZPL quoted by the dissent in support of its argument, OCGA § 36-66-2 (a), does not purport in and of itself to assure due process in all land use regulation contexts, but only when "local governments regulate the uses of property through the exercise of the zoning power." Id. That is, the *Zoning* Procedures Law assures due process in *zoning* cases.

While a sign control ordinance is unquestionably a form of land use regulation, this Court has distinguished such ordinances from

zoning ordinances.

> Under its police power authority, a municipality can enact and enforce reasonable regulations governing the erection and maintenance of signs within its jurisdiction. [The] contention that [the sign control ordinance] is in fact a zoning ordinance, and that its enactment was procedurally defective, is without merit.

*City of Doraville v. Turner Communications Corp.*, 236 Ga. 385, 387 (223 SE2d 798) (1976). Since this Court had plainly stated in *City of Doraville*, supra, that sign control ordinances are not zoning ordinances, the legislature's failure to specifically include sign ordinances within the ambit of zoning indicates that it did not intend the limited definition of zoning ordinance to apply to such enactments.

Unfortunately, our own holdings on the subject have not been entirely uniform. The trial court here cited our decision in *Outdoor West, Inc. of Georgia v. Coweta County*, 270 Ga. 527 (512 SE2d 604) (1999), for the proposition that a case concerning the constitutionality of a sign ordinance is a zoning case. That citation was not inappropriate because we dismissed in that case a direct appeal from a judgment upholding a sign control ordinance against a constitutional attack, holding as follows: "As this is an appeal from a decision in a zoning case, appeal to this Court is by the application procedures of OCGA § 5-6-35." Id. From that holding, it would be reasonable to conclude that the ordinance involved was a zoning ordinance. However, a review of the record in that case demonstrates that the ordinance involved was a general sign control ordinance which was applicable to the entire municipality, did not divide the municipality into zones or districts, and did not use zones or districts to regulate signs. The only reference to zoning in the sign control ordinance was a caution that the municipality's zoning ordinance might be a source of additional restrictions. Thus, under the definitions set forth in the ZPL and this Court's holding in *City of Doraville*, supra, the sign control ordinance was not a zoning ordinance. Accordingly, to the extent the decision in *Outdoor West, Inc. of Georgia v. Coweta County*, supra, can be read to hold that sign control ordinances are zoning ordinances, it should be overruled.

In summary, I conclude that since the moratorium at issue in this case did not involve the division of the City into zones or districts and did not regulate signs with regard to such a division, it was not a zoning ordinance within the meaning of that phrase in the ZPL. Consequently, the moratorium was not subject to the notice provisions of the ZPL and was not rendered void for failure to comply with those provisions. Rather than invent exemptions from the General Assem-

bly's carefully crafted legislation regarding zoning, we should clarify the law of land use regulation by recognizing that zoning is only one of the tools available for that purpose, we should resolve the controversy in this case by holding that sign control ordinances such as the moratorium in question are not zoning ordinances because they do not involve zoning, and we should face our mistakes forthrightly and overrule *Outdoor West, Inc. of Georgia v. Coweta County,* supra. Because the majority opinion serves only to perpetuate error and obfuscate the law, I cannot join any part of it other than the judgment line.

CARLEY, Justice, dissenting.

In this case, the trial court held that the City's moratorium on the implementation of its then-existing sign ordinance was a "zoning decision" within the meaning of OCGA § 36-66-3 (4) and, thus, was subject to the requirements of the Zoning Procedures Law (ZPL), OCGA § 36-66-1 et seq. The majority reverses, but, in my opinion, the trial court was correct. Therefore, I dissent.

The express purpose of the ZPL is "to establish as state policy" minimum procedural safeguards "to assure that due process is afforded to the general public when local governments regulate the uses of property through the exercise of the zoning power." OCGA § 36-66-2 (a). In furtherance of this goal of insuring protection of the constitutional rights of private property owners, the ZPL adopted the following definition of "zoning":

> the power of local governments to provide within their respective territorial boundaries for the zoning or districting of property for various uses and the prohibition of other or different uses within such zones or districts and for the regulation of development and the improvement of real estate within such zones or districts in accordance with the uses of property for which such zones or districts were established.

OCGA § 36-66-3 (3). Clearly, this is an inclusive definition, and certainly broad enough to encompass the power of a local government to enact a comprehensive ordinance which regulates the right of owners to use their property for the purpose of erecting and maintaining signs.

Although the City's sign ordinance is itself a "zoning ordinance" within the meaning of OCGA § 36-66-3 (5) because it regulates the use to which the owner of property within the municipal territorial boundaries may put his or her property, the question presented in this case is whether the enactment of a moratorium on the continued implementation of that ordinance is a "zoning decision" within the

meaning of OCGA § 36-66-3 (4). The majority concludes that the moratorium is not within that definition because it did not constitute "final legislative action" as provided in OCGA § 36-66-3 (4). However, the fallacy in this reasoning is apparent. The moratorium was undeniably "final" insofar as the enforceability of the City's then-existing sign ordinance was concerned. I submit that an enactment which terminates a property owner's right to pursue a particular use is certainly a procedural device which serves to regulate that use and, consequently, would be a "zoning ordinance" as defined by OCGA § 36-66-3 (5). See *Atlanta Bio-Med v. DeKalb County*, 261 Ga. 594, 596 (2) (408 SE2d 100) (1991) (rescission of a zoning ordinance is a "zoning decision"). If the moratorium is a "zoning ordinance," then its adoption by the City is a "zoning decision" as defined by OCGA § 36-66-3 (4) (A). If the promulgation of the moratorium is a "zoning decision," then the City, in order to provide minimum due process to the property owners within its territorial boundaries, must comply with the procedural requirements of OCGA § 36-66-4. It is undisputed that the City did not do so, but summarily refused to enforce Outdoor Systems' rights as a property owner under the then-existing municipal sign ordinance.

In my opinion, the trial court correctly concluded that the failure to comply with the mandatory procedural requirements of the ZPL compelled the City to consider Outdoor Systems' rights in accordance with the law in effect prior to the enactment of the void moratorium. The majority takes the contrary position that a local government can control, and even prohibit, a property owner's use of his or her own property without satisfying the minimum due process requirements mandated under the ZPL. Thus, I dissent to the majority's reversal of the trial court's proper disposition of this case.

DECIDED JULY 2, 2001 —
RECONSIDERATION DENIED JULY 26, 2001.

*Carothers & Mitchell, Richard A. Carothers, William M. Coolidge III*, for appellants.

*Schreeder, Wheeler & Flint, David H. Flint, Mark W. Forsling*, for appellee.

*Bovis, Kyle & Burch, John V. Burch, Susan M. Pruett, James F. Grubiak, Ted C. Baggett, Kelly J. Pridgen, Phears & Moldovan, H. Wayne Phears*, amici curiae.