A05A0881. BUCKNER v. DOUGLAS COUNTY et al.
(615 SE2d 850)

PHIPPS, Judge.

Jerry Buckner brought this suit against Douglas County and its board of commissioners. He complains of the county's refusal to issue building permits allowing him to develop property in conformity with its classification under a zoning ordinance no longer in effect. He seeks enforcement of an agreement by the board of commissioners to allow him to develop the property under the prior zoning ordinance. After a bench trial, the court entered an order correctly concluding that the settlement agreement is unenforceable because it amounts to a zoning decision rendered in violation of Georgia's Zoning Procedures Law (ZPL). We affirm.

Buckner is a real estate developer who, in April 2002, entered into an agreement to purchase a tract composed of approximately 68 acres in Douglas County. The provisions of the Douglas County Zoning Ordinance[1] then in effect allowed Buckner to build single-family homes on one-acre lots in the tract. Buckner's contract to purchase the 68 acres was contingent upon his ability to obtain the necessary building permits. Shortly after entering into the purchase contract, Buckner met with Douglas County's director of planning and zoning. Buckner testified that the director assured him that his conceptual development plan satisfied the county's existing zoning ordinance.

In May 2002, Douglas County amended its zoning ordinance to create various watershed protection districts for the purpose of maintaining the quality of the county's public drinking water. Buckner's property is located in one of the watershed protection districts. The 2002 amendment requires a minimum three-acre lot size for residential developments in that district.

Buckner testified that upon learning of the amendment, he contacted the planning and zoning director and was told by him that he would be "grandfathered" into the prior zoning ordinance. In August 2002, Buckner met with the planning and zoning director, the chairman of the Douglas County Board of Commissioners, and one other Board member to discuss his development plans. After that meeting, Buckner sent a letter dated September 4, 2002, to the director and chairman, documenting his claim that he had acquired a vested right to develop the 68-acre tract in conformity with zoning regulations in effect prior to May 2002.

---

[1] "A zoning ordinance is one that establishes procedures and zones or districts which regulate the uses and development standards of property within such zones or districts." *Greater Atlanta Homebuilders Assn. v. DeKalb County*, 277 Ga. 295 (1) (588 SE2d 694) (2003) (punctuation and footnote omitted).

In response, a letter — on stationery of the Douglas County Board of Commissioners, dated September 24, 2002, and signed by the chairman and by the vice chairman of the board of commissioners and by one of the other three Board members — was sent to Buckner. The letter stated that the Board had carefully reviewed Buckner's documentation and his revised development plans (that incorporated upgrades not required under regulations then or previously in effect). The letter advised Buckner that, in view of his "substantial documentation" of his claim of vested rights as well as his offer of community upgrades, the Board had agreed as an offer of compromise and settlement of threatened litigation to allow him to proceed with the modified development plans. The letter further advised Buckner that the letter was "not an admission of Douglas County regarding the merits of your position." The letter asked Buckner to respond by a specified date if he accepted the conditions placed on the development or the offer would be withdrawn. Buckner sent a timely written response agreeing to the conditions and thereby accepting the offer. In reliance, he continued to incur additional development costs and, in February 2003, concluded his purchase of the property.

Nonetheless, the Board later informed Buckner that he would not be issued building permits because his proposed development plans specified one-acre lots in violation of the three-acre minimum lot requirement in the 2002 zoning amendment.

As a result, Buckner brought this suit. In his complaint, he sought a writ of mandamus compelling the county to issue permits authorizing him to develop his property under the prior zoning classification. He claimed that he had acquired a vested right to do so by spending substantial sums of money in reliance on assurances by county officials that such permits would be issued and that the Board had already agreed to allow him to do so by settling his threatened litigation. At trial, Buckner abandoned his claim of vested rights as such and instead sought enforcement of the Board's September 24 letter as a binding litigation settlement agreement.

The trial court concluded that the Board's attempt in its September 24, 2002 letter to allow Buckner to develop his property under the zoning ordinance as it existed prior to the 2002 amendment was a nullity because the Board failed to comply with the requirement of the ZPL for notice and a hearing before a local government takes action resulting in a zoning decision.

The ZPL is codified at OCGA § 36-66-1 et seq. As recognized in OCGA § 36-66-2, it is the intention of the ZPL to establish as state policy minimum procedures governing exercise of the zoning power by local governments to assure that due process is afforded the general public when local governments regulate property uses. OCGA § 36-66-4 (a) thus requires a local government taking action resulting

in a zoning decision to provide for a hearing on the proposed action preceded by certain public notice. Under OCGA § 36-66-3 (4), "zoning decision" means:

> final legislative action by a local government which results in: (A) The adoption of a zoning ordinance; (B) The adoption of an amendment to a zoning ordinance which changes the text of the zoning ordinance; (C) The adoption of an amendment to a zoning ordinance which rezones property from one zoning classification to another; (D) The adoption of an amendment to a zoning ordinance by a municipal local government which zones property to be annexed into the municipality; or (E) The grant of a permit relating to a special use of property.[2]

*WMM Properties v. Cobb County*[3] sets forth the rules which Georgia case law has developed to resolve whether a property owner has acquired a vested right to develop property under a zoning ordinance that is amended before building permits for the development are issued. *WMM* recognized *Spalding County v. East Enterprises*,[4] as holding that

> [a] landowner has a right to develop property where the property was purchased in reliance upon the assurance of one county commissioner that the property was zoned for the use intended, the development plan was in accordance with the existing zoning and was approved, albeit informally, by the county commissioners, and the landowner has expended money in reliance upon the development plan and the existing zoning.[5]

*WMM* also recognized *Barker v. County of Forsyth*[6] as holding that

> "[w]here a landowner makes a substantial change in position by expenditures in reliance upon the probability of the

---

[2] See *City of Roswell v. Outdoor Systems*, 274 Ga. 130 (1) (549 SE2d 90) (2001); *RCG Properties v. City of Atlanta Bd. of Zoning Adjustment*, 260 Ga. App. 355, 361 (1) (579 SE2d 782) (2003); as to special use permits, see *Dougherty County v. Webb*, 256 Ga. 474, 475-476 (1) (350 SE2d 457) (1986) (recognizing that such techniques were developed to permit a special use authorized by an existing zoning ordinance on the condition that it be approved by the appropriate governing body).

[3] 255 Ga. 436, 437-440 (1) (339 SE2d 252) (1986).

[4] 232 Ga. 887 (209 SE2d 215) (1974).

[5] 255 Ga. at 439 (1) (c).

[6] 248 Ga. 73 (281 SE2d 549) (1981).

issuance of a building permit, based upon an existing zoning ordinance and the assurances of zoning officials, he acquires vested rights and is entitled to have the permit issued despite a change in the zoning ordinance which would otherwise preclude the issuance of a permit."[7]

Because it does not appear that Buckner either concluded his purchase of the subject property, or made substantial expenditures in reliance upon the probability of issuance of a building permit, until after the county zoning ordinance had been amended,[8] he did not acquire a vested right to develop the property in conformity with the prior zoning classification under the rules set forth in *WMM*.[9]

The Board's September 24 letter to Buckner, therefore, amounted to an agreement to amend the zoning ordinance to authorize Buckner to develop the property in conformity with the prior zoning classification on certain conditions.[10] Even though that did not constitute a zoning ordinance amendment changing the text of the county zoning ordinance under OCGA § 36-66-3 (4) (B), it constituted an amendment to the zoning ordinance rezoning (or perhaps re-rezoning) the property from one classification to another under OCGA § 36-66-3 (4) (C). The grant of such a request, even if motivated by a claim of vested property rights by Buckner, still resulted in an amendment to the zoning ordinance that invoked the notice and hearing requirements of the ZPL.[11] As recognized in cases such as *Yost v. Fulton County*,[12] the amendment of a zoning ordinance in violation of such requirements "is without any legal force or effect and the party requesting the amendment does not acquire any additional rights in

---

[7] 255 Ga. at 439 (1) (d) (citation and punctuation omitted).

[8] In arguing that he did make such expenditures, Buckner points to evidence showing that he spent $1,000 for preparation of the conceptual development plan and $2,190 for soil tests. Clearly, however, the conceptual development plan was prepared before Buckner even met with the county zoning official. And it appears from the record that the soil tests were conducted at about the same time.

[9] It is, therefore, understandable that Buckner abandoned his claim of entitlement to issuance of building permits enforceable through a writ of mandamus based on a vested property rights theory.

[10] As to conditional rezoning, see generally *Cross v. Hall County*, 238 Ga. 709 (235 SE2d 379) (1977); *AT&T Wireless PCS v. Leafmore Forest Condo. Assn.*, 235 Ga. App. 319, 322 (3) (509 SE2d 374) (1998).

[11] If the notice and hearing requirements had been followed, the board of commissioners would have been required to consider public opposition to the "re-rezoning" of Buckner's property. The Board might then have granted Buckner's rezoning request based on his vested property rights claim. If so, any aggrieved members of the public could have contested the rezoning decision if they had standing. The Board might also have denied Buckner's rezoning request. If so, Buckner could have sought a writ of mandamus arguing that he had acquired a legal right to develop his property under the prior zoning classification.

[12] 256 Ga. 324 (348 SE2d 638) (1986).

[his] property due to the invalid amendment of the zoning ordinance."[13]

In arguing that the Board's September 24 letter did not constitute a zoning decision under the ZPL, Buckner relies on *DeKalb County v. DRS Investments.*[14] In *DRS*, a business that had erected an outdoor advertising sign in violation of the height requirements of a county ordinance sued to have the ordinance declared unconstitutional. The litigation was settled by a consent order agreed to by the county attorney's office. The county moved to set aside the consent order, arguing that the county attorney lacked the authority to consent to a settlement of the case in a manner that granted a variance to the county's sign ordinance without the approval of the board of commissioners. We held that the issue of whether the sign owner had acquired a vested property right under a prior ordinance was not well settled and that the county attorney had the authority to bind the county to the consent order under the maxim that "compromises of doubtful rights are upheld by public policy."[15] *DRS* is distinguishable from this case. That case involved settlement of a case in a way that arguably amounted to grant of a variance. The grant of a variance does not constitute legislative (or other) action by a local government resulting in a zoning decision under the ZPL.[16] Therefore, the rule set forth in *Yost*, though inapplicable in *DRS*, is applicable and controlling against Buckner here.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JUNE 20, 2005.

*Moore, Ingram, Johnson & Steele, J. Kevin Moore*, for appellant.
*Freeman, Mathis & Gary, Paul B. Frickey, Dana K. Maine*, for appellees.

---

[13] Id. at 325 (1) (citation and punctuation omitted); see also *Café Risque/We Bare All Exit 10 v. Camden County*, 273 Ga. 451, 453 (542 SE2d 108) (2001) (in order for property right to vest, special use building permit must be based upon a permitted use under zoning law then in force).

[14] 260 Ga. App. 225 (581 SE2d 573) (2003).

[15] Id. at 229 (2) (punctuation and footnote omitted).

[16] See *Jackson v. Spalding County*, 265 Ga. 792, 793 (2) (462 SE2d 361) (1995) (deciding a property owner's request for a variance requires an exercise of judicial powers by taking into consideration whether the facts applying to a specific piece of property warrant relief from zoning under the standards set in the county ordinance).